[Civ. No. 35701. First Dist., Div. Three. Jan. 16, 1976.]

A & A ELECTRIC, INC., et al.,
Plaintiffs, Cross-defendants and Respondents, v.
CITY OF KING, Defendant, Cross-complainant and Appellant.

458

## COUNSEL

Wilson, Jones, Morton & Lynch, Jeremiah J. Lynch and Roy J. Koegen for Defendant, Cross-complainant and Appellant.

Noland, Hamerly, Etienne & Hoss and Peter T. Hoss for Plaintiffs, Cross-defendants and Respondents.

## OPINION

**KONGSGAARD, J.**\*—This is an appeal from a judgment granting plaintiff contractor and its surety relief from an erroneous bid and forfeiture of a bid bond.

In 1972 the City of King called for bids for airport improvements. When the bids were opened on June 26, 1972, plaintiff's bid of $30,517.60 was approximately $7,000 lower than the next bid. After a discussion with one of the other bidders present at the opening, plaintiff's representative advised those present that there was a mistake in the bid. The city council met later the same day to consider the bids. Plaintiff's manager attended the meeting and advised the city council that A & A Electric had made a clerical or mathematical mistake of about $4,500 without offering any explanation of the details of the claimed mistake. He also asked the city council for permission to either increase the bid by that amount or to withdraw the bid. The city attorney advised the council that they could accept the bid and later increase the amount if an error was shown. The city council adopted a resolution awarding the contract to A & A Electric at the $30,517.60 figure.

The error did not appear on the face of the bid. At the time of the meeting the council was told only that a $4,500 mistake had been made by plaintiff in its bid but were not given any details of how the mistake occurred. Thus, the city council had no knowledge of the nature or the details of the claimed mistake in the bid. The council never requested an explanation of the claimed mistake nor did plaintiff offer one. It was not until time of trial that the nature of plaintiff's mistake was revealed. Trial testimony indicated plaintiff apparently wrote $400 in the bid where it intended to place $4,000. Trial testimony also revealed that plaintiff in its bid failed to allow for installation costs or profits in its calculations for installing a lighting system.

Due to administrative delays, federal project approval was withheld until September 15, 1972. On September 20, 1972, the city manager sent the formal contract to plaintiff with the plaintiff's bid figure of $30,517.60 unchanged. Plaintiff immediately informed the city that it would not perform the work for $30,517.60. A letter confirming the refusal was sent by plaintiff on September 22 to the city. On the same day, the city sent notice to plaintiff that unless the work was performed, it would take

---

\*Assigned by the Chairman of the Judicial Council.

action to forfeit the $3,051.76 bid bond posted by plaintiff. On October 6, 1972, the plaintiffs filed an action seeking relief from forfeiture, and on October 11, 1972, the city formally requested payment of the bid bond.

In its complaint plaintiff requested (a) cancellation of the bid and relief from forfeiture of the bid bond pursuant to Government Code sections 4200-4208; and (b) rescission due to mutual mistake. The trial court ordered judgment for plaintiff granting relief from forfeiture of its bid bond, awarded plaintiff attorneys' fees, and denied judgment to the defendant city on its cross-complaint for damages.

## Questions Presented.

(1) Do sections 4200-4208 of the Government Code control this case? (2) Was there substantial compliance with section 4200 et seq.? (3) Is the city's recovery on the cross-complaint limited to the amount of the bond?

## Applicability of Government Code sections 4200-4208.

It is plaintiff's contention that it is entitled to relief from its mistake under the provisions of Government Code sections 4200-4208, as well as under the equitable doctrine of rescission. The city asserts the Government Code sections set forth the exclusive procedure for a contractor on a public contract to seek equitable relief from a bid on the grounds of mistake. Defendant claims plaintiff failed to comply with the provisions of the Government Code and should be denied relief.

Prior to the enactment of Government Code sections 4200-4208 in 1971, the case of *M. F. Kemper Const. Co.* v. *City of L. A.* (1951) 37 Cal.2d 696 [235 P.2d 7], was the leading authority on the issue of relief of public contract bidders whose bids contained material mistakes. The Supreme Court held that once opened, the bid was in the nature of an irrevocable option, a contract right that a public entity could not be deprived of without its consent unless the requirements for rescission were satisfied. (*Id.*, at p. 700.) The defendant in the *Kemper* case had actual notice of the error in the bid because plaintiff submitted detailed evidence within a few days to the city showing that a $300,000 item had been mistakenly omitted from the bid. Because of the actual notice, the contractor's mistake was treated as a mutual mistake, the requirements of rescission were satisfied and the contractor was permitted to cancel its bid and obtain discharge of its bid bond.

It is important to note that the bidding procedures in the *Kemper* case were governed by the terms of the city charter which made the bids irrevocable and had no provision for relief to bidders for a mistake in a bid. Moreover, the bid form had a provision that bidders would not be released because of errors.

In the *Kemper* case the city argued that the bidder should be bound by the strict provisions of the charter and asserted that the public interest precluded any right to rescind for mistake. The Supreme Court rejected this argument, and stated: "[A] bid . . . is subject to rescission upon proper equitable grounds, and the cases recognize no distinction between public and private contracts with regard to the right of equitable relief." (*M. F. Kemper Const. Co.* v. *City of L. A., supra,* 37 Cal.2d at p. 704.) Since redress was not available under the city charter or by virtue of any legislative enactments extant at that time, the only remedy available to the bidder seeking relief from mistake in the *Kemper* case was an action for rescission. Since the requirements of common law rescission were satisfied the court held it would be unconscionable to hold the contractor to its bid because of a clerical error resulting in an omission of an item amounting to one-third of its original bid.

In 1971 the state Legislature established a comprehensive statutory procedure in connection with *public contracts* (italics ours) to enable a contractor to claim relief from a bid mistake by following certain procedural steps. In that regard, the Legislature enacted chapter 3 of the Government Code entitled "Relief of Bidders." (Gov. Code, §§ 4200-4208.)[1]

---

[1]The provisions pertinent to the case at bench are set forth: "§ 4200. (a) 'Public entity' means the state, Regents of the University of California, a county, city and county, city, district, public authority, public agency, and any other political subdivision or public corporation in the state. (b) 'Bid' means any proposal submitted to a public entity in competitive bidding for the construction, alteration, repair, or improvement of any structure, building, road or other improvement of any kind. [¶] § 4201. A bidder shall not be relieved of his bid unless by consent of the awarding authority nor shall any change be made in his bid because of mistake, but he may bring an action against the public entity in a court of competent jurisdiction in the county in which the bids were opened for the recovery of the amount forfeited, without interest or costs. [¶] The bond of an admitted surety insurer shall be filed with the complaint, in such sum as the court may fix, but not less than five hundred dollars ($500), conditioned that, if the plaintiff fails to recover judgment, he shall pay all costs incurred by the public entity in the suit, including a reasonable attorney's fee to be fixed by the court. [¶] § 4202. The complaint shall be filed, and summons served on the director of the department or the chief of the division or other head of the public entity under which the work is to be performed or an appearance made, within 90 days after the opening of the bid; otherwise, the action shall be dismissed. [¶] § 4203. The bidder shall establish to the satisfaction of the court that:

Prior to 1971 there were two other nearly identical statutory schemes for "relief of bidders" on certain public projects but they were limited to bids submitted to the state department of public works[2] and state colleges.[3] It is clear that none of these statutory bases for relief to bidders on public contracts would have been available to plaintiff in the *Kemper* case.

■ By enacting Government Code sections 4200-4208, the Legislature expanded the categories of public entities from whom a bidder could assert a claim for relief from a mistaken bid. "It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing upon them." (*Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242].) And as stated in *Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241], "[E]very *statute should be construed with reference* to the whole system of law of which it is a part so that all may be harmonized and have effect. [Citations.] In construing these . . . statutes . . . it is proper to consider the history and purpose of the enactments . . . other *statutes in pari materia* and the benefits sought to be provided." [Italics added.] Significant to the case at bench is the inclusion of cities in Government Code sections 4200-4208. By this legislation the Legislature established a clear-cut procedure whereby a contractor submitting a mistaken bid to a city could claim relief without the necessity of filing an action in rescission.

Sections 4200-4208 were in effect in June of 1972, when plaintiff submitted its bid to the defendant. Unlike the contractor in *Kemper* and in *Elsinore Union etc. Sch. Dist.* v. *Kastorff* (1960) 54 Cal.2d 380 [6 Cal.Rptr. 1, 353 P.2d 713], plaintiff in the case at bench had a statutory remedy and was thus not required to rely on the equitable doctrine of rescission. The Legislature may establish a statutory procedure for the exercise of a common law right and in the absence of some constitutional

(a) A mistake was made. (b) He gave the public entity written notice within five days after the opening of the bids of the mistake, specifying in the notice in detail how the mistake occurred. (c) The mistake made the bid materially different than he intended it to be. (d) The mistake was made in filling out the bid and not due to error in judgment or to carelessness in inspecting the site of the work, or in reading the plans or specifications."

[2]Government Code sections 14350-14355, enacted 1945 as to 14350-14353 and 1971 as to 14354-14355.

[3]Education Code section 25310-25315 enacted 1961 as to 25310-25313 and 1971 as to 25314-25315.

infirmity a failure to comply with the procedure may be deemed a waiver of the right to relief. (See *Bleamaster* v. *County of Los Angeles* (1961) 189 Cal.App.2d 274, 279-280 [11 Cal.Rptr. 214].)

We are persuaded that sections 4200-4208 of the Government Code establish the exclusive procedure for relieving a bidder from a mistake in a bid submitted to a public entity listed in Government Code section 4200.

*Was there substantial compliance with*
*Government Code sections 4200-4208?*

■ Appellant contends plaintiff failed to comply with the five day notice provision. Government Code section 4203, subdivision (b), provides in pertinent part as follows: "The bidder shall establish to the satisfaction of the court that: . . . (b) He gave the public entity *written notice* within *five days* after the *opening* of the *bids* of the mistake, *specifying in the notice in detail how the mistake occurred.* . . . (d) The mistake was made in filling out the bid and not due to error in judgment or to carelessness in inspecting the site of the work, or in reading the plans or specifications." [Italics added.]

At the time of the bid opening plaintiff's representative advised those present that a mistake of a clerical or mathematical nature had been made but gave no details of the nature of the mistake or how it occurred. The trial court found that this was compliance with Government Code section 4203 because the city council had actual notice of a mistake by the bidder.

The purpose of section 4203, subdivision (b), is to provide the public entity with definite and specific information about the nature of the mistake so the public entity can make an informed decision on whether or not to consent to grant relief from the bid. It is without dispute that the city was never given such detailed information either in writing or orally. The comment of plaintiff's representative at the bid opening that a clerical or mathematical mistake had been made cannot rescue the plaintiff's position under the doctrine of substantial compliance. Since plaintiff gave no explanation of the mistake as required by the statute, such conclusionary statements might well be considered by the council as an error in judgment or carelessness in reading the plans.

Plaintiff seems to place great emphasis on the fact that none of the council members questioned plaintiff about the nature of its mistake. Such emphasis is misplaced since the statute, Government Code section 4203, clearly places the burden on the bidder to specify in detail how the mistake occurred within five days of the bid opening. This the plaintiff failed to do. In construing a similar statute, Government Code section 14352 (*ante,* fn. 2), the court in *Saliba-Kringlen Corp.* v. *Allen Engineering Co.* (1971) 15 Cal.App.3d 95, 105 [92 Cal.Rptr. 799] (hg. den.) stated: "To be relieved of its bid, the general contractor would first have had to give five days' written notice to the state 'after the opening of the bids of the mistake, specifying in the notice in detail how the mistake occurred.' (Gov. Code, § 14352.) Although the general contractor had notice at the time of the opening of the bids that defendant had made a mistake, the general contractor had not been told how the mistake occurred. Defendant did nothing within five days after the opening of bids to apprise the general contractor of how the mistake occurred. Even if we were to make the unjustified assumption that it was the general contractor's duty to ascertain how the mistake occurred, the general contractor would have been required to show that the mistake was not due 'to carelessness in . . . reading the plans or specifications' and that the 'mistake made the bid materially different than' the general contractor intended it to be. (Gov. Code, § 14352.)"

Since the plaintiff, in the case at bench, did nothing within five days after the bid opening (or at any other later time prior to trial), to apprise the city of how the mistake occurred, there was neither actual nor substantial compliance with the provisions of Government Code section 4203. Accordingly, there is no substantial evidence to support the trial court's finding of compliance with section 4203; plaintiff, therefore, was not entitled to relief.

Having determined plaintiff failed to comply with the five day notice requirement of Government Code section 4203 we find it unnecessary to consider defendant's further contention that plaintiff failed to file its complaint within 90 days after the bid opening.

■ During the trial as well as at oral argument plaintiff's counsel adverted to comments by the city attorney at the city council meeting which suggested plaintiff's bid could be increased at a later time if an error were shown. Arguably, such comments by the city attorney could have misled the plaintiff into failing to follow the procedures for relief for bidders set forth in section 4200 et seq., of the Government Code. In

short such conduct might have raised an issue of estoppel. However, we are foreclosed from a consideration of estoppel because, at the time of trial, plaintiff not only failed to raise the question of estoppel but affirmatively indicated to the trial court that estoppel was not an issue in the case.

### Cross-Complaint.

■ The city, in its cross-complaint, seeks not only a forfeiture of plaintiff's bid bond but also damages for breach of contract for the difference between plaintiff's erroneous bid and the next lowest bid. The city cites no authority permitting such recovery and we find none.

Although provisions for forfeitures in the nature of a penalty are generally not favored (*Petrovich* v. *City of Arcadia* (1950) 36 Cal.2d 78, 84 [222 P.2d 231]), "the right of municipalities to require guarantee deposits to accompany bids, and to forfeit them in the event of the failure or refusal of the successful bidder to enter into the contract, has long been upheld." (*Palo and Dodini* v. *City of Oakland* (1947) 79 Cal.App.2d 739, 747 [180 P.2d 764].) Such, "provisions requiring a deposit accompanying a bid for city contracts, or for forfeiture thereof, are necessary as a matter of public policy . . . ." (*Id.,* at p. 750.) The specific statutory procedures for the presentation and forfeiture of bid bonds relating to a bid on a city project are found in Government Code sections 37931-37933.[4]

Pursuant to its authority the City of King in its instructions to bidders called for a 10 percent bond to be forfeited as liquidated damages if the bidder refused to enter into the contract. By its own instructions to bidders defendant clearly limited the obligation of the bidder to the amount of the bond. "The wording of the bid invitation and the executed bid was of the city's own choosing and should not be held to extend the bidder's and the surety's hazards beyond its fair meaning. [Citation.]" (*Petrovich* v. *City of Arcadia, supra,* 36 Cal.2d at p. 85.)

We hold the city may recover the amount of the bond but is not entitled to damages for breach of contract.

---

[4]Government Code sections 37931-37933 read in pertinent part as follows: "§ 37931. All bids shall be presented under sealed cover and accompanied by one of the following forms of bidder's security. . . . (d) A bidder's bond executed by an admitted surety insurer, made payable to the city. [¶] § 37932. The security shall be in an amount equal to at least 10 percent of the amount bid. . . . [¶] § 37933. If the successful bidder fails to execute the contract, the amount of his bidder's security shall be forfeited to the city except as hereinafter provided."

The judgment for plaintiff in the action seeking relief from forfeiture of the bond is reversed. The city has the right to retain the bid bond as liquidated damages. Judgment for plaintiff and cross-defendant on the city's cross-complaint is affirmed. Each party to bear its own costs on appeal.

Draper, P. J., and Brown, (H. C.), J., concurred.