[Civ. No. 41203. First Dist., Div. Four. Apr. 25, 1978.]

BALLIET BROS. CONSTRUCTION CORP., Plaintiff and Appellant, v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants and Respondents.

**Counsel**

Browne & Kahn, John R. Browne III, Ronald H. Kahn and R. Steven Corbitt for Plaintiff and Appellant.

Donald L. Reidhaar, George L. Marchand and Lawrence B. Garcia for Defendants and Respondents.

**Opinion**

**RATTIGAN, Acting P. J.**—Appellant Balliet Bros. Construction Corp., a general contractor, submitted a bid on a construction contract to be awarded by the University of California. The bid was accompanied by a "bid bond" in which appellant and a corporate surety obligated

themselves to the University in the penal sum of 10 percent of the amount bid. Appellant subsequently brought this action against the University,[1] seeking to avoid a forfeiture of the bond pursuant to a chapter of the Government Code (hereinafter chapter 3) which may be invoked by a bidder on a public construction contract who claims to have made an excusable mistake in its bid.[2] The trial court sustained a general demurrer to appellant's complaint, without leave to amend, and dismissed the action. The appeal is from the judgment of dismissal.

---

[1]The respondents on the appeal are the Regents of the University and its department of facilities management, who were named as the defendants in the action. We refer to them, collectively, as "the University."

[2]Except where otherwise indicated, all statutory references herein are to the Government Code. The "chapter 3" mentioned appears in division 5 of title 1, commencing with section 4200. We quote its provisions, at some length but in necessary pertinent part, as follows (all italics added):

"Chapter 3. Relief of Bidders

"4200. (a) 'Public entity' means the state, *Regents of the University of California,* a county, . . . and any other political subdivision or public corporation in the state. [¶] (b) 'Bid' means any proposal submitted to a public entity in competitive bidding for the construction, . . . or improvement of any structure . . . .

"4201. A bidder shall not be relieved of his bid unless by consent of the awarding authority nor shall any change be made in his bid *because of mistake,* but he may bring an action against the public entity in a court of competent jurisdiction in the county in which the bids were opened *for the recovery of the amount forfeited,* without interest or costs. . . .

"4202. The complaint shall be filed, and summons served on . . . the public entity . . . *within 90 days* after the opening of the bid; otherwise, the action shall be dismissed.

"4203. The bidder shall establish to the satisfaction of the court that: [¶] (a) A mistake was made. [¶] (b) He gave the public entity written notice *within five days* after the opening of the bids of the mistake [*sic*], specifying in the notice in detail how the mistake occurred. [¶] (c) The mistake made the bid materially different than he intended it to be. [¶] (d) The mistake was made in filling out the bid and not due to error in judgment or to carelessness in inspecting the site of the work, or in reading the plans or specifications.

" . . . . . . . . . . . . .

"4205. A bidder who claims a mistake *or* who forfeits his bid security shall be prohibited from participating in further bidding on the project on which the mistake was claimed *or* security forfeited.

"4206. If the public entity deems it is for its best interest, it may, on refusal or failure of the successful bidder to execute the contract, award it to the second lowest bidder. [¶] If the second lowest bidder fails or refuses to execute the contract, the public entity may likewise award it to the third lowest bidder. [¶] On the failure or refusal of the second or third lowest bidder to whom a contract is so awarded to execute it, his bidder's security shall be likewise forfeited.

"4207. In all actions brought under the provisions of this chapter, all courts wherein such actions are or may hereafter be pending, shall give such actions preference over all other civil actions therein, in the matter of setting the same for hearing or trial, and in hearing the same, to the end that all such actions shall be quickly heard and determined.

"4208. This chapter shall not apply to contracts awarded pursuant to Chapter 3 (commencing with Section 14250) of Part 5 of Division 3 of Title 2 [of the Government Code], nor to contracts awarded pursuant to Chapter 14 (commencing with Section 25200) of Division 18 of Part 4 of the Education Code."

By reason of the procedural sequence indicated, the question is whether appellant's complaint states a cause of action. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) ■ We first observe that it omits certain factual allegations, and unclearly states others, which are necessary or desirable in the statement of a cause of action under chapter 3. We would ordinarily be limited to its face in reviewing it (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 797, pp. 2410-2412), but the University's brief includes a statement of "Facts" which ranges far outside the complaint and supplies most of the details which are omitted from it. We have also been requested to take judicial notice of the pleadings in another action, commenced by the University against the surety on appellant's bid bond, in which many of the same details appear in the University's complaint. They are such that appellant's complaint might readily be amended to include them. Under these circumstances, and in the state of the record generally, we (1) take the judicial notice requested and (2) include the missing details in the factual recitals which follow. (See Evid. Code, §§ 452, subd. (d), 455, subd. (a), 459, subds. (a), (c); 3 Witkin, *op. cit.,* Pleading, §§ 798, 845, pp. 2412, 2450. See also 6 Witkin, *op. cit.,* Appeal, § 428, p. 4394.)

*Facts*

The pertinent events occurred between July 1976, and April of 1977. On July 13, the University advertised for competitive bids on a contract to be awarded for the construction of a building on its San Francisco campus. Its advertisement stated, among other things, that any bid submitted must be accompanied by "bid security" in the sum of 10 percent of the amount bid and in the form of cash, a cashier's check, a certified check, or a "bid bond" in a specified form. Appellant submitted a written bid in the amount of $916,130 and a bid bond in which it and American Insurance Company, as its surety, jointly obligated themselves to the University in the specified form and in the 10 percent "penal sum" of $91,613.[3]

---

[3]The amount of the bid security exacted in the University's advertisement, and the optional forms permitted, appear to have been adopted from the State Contract Act (Gov. Code, § 14250 et seq.), which requires bid security calculated at 10 percent of the amount bid, and that it be submitted in any of the same four alternative forms, as conditions of any bid on certain construction contracts to be awarded by the State of California as such. (*Id.,* § 14314.) A similar requirement appears in the California State University and Colleges Contract Law. (Ed. Code, §§ 25200 et seq., 25275.) Both of these laws also include "relief of bidders" provisions substantially similar to those in chapter 3, which expressly excludes from its reach the bidding on any contract awarded under either

When the bids were opened on August 12, the University determined that appellant was the lowest qualified bidder. On the next day, appellant notified the University in writing that it had made a mistake in its bid, that the bid was consequently incorrect, that the mistake had not been due to an error or carelessness as mentioned in section 4203, subdivision (d), and that appellant requested leave to withdraw the bid. The University examined the notice and the bid, determined that the mistake was due to carelessness on appellant's part, and declined the request. On September 17, after appellant had refused to execute the contract, the University awarded it to the second lowest bidder. On November 1, the University made written demand upon American Insurance Company that it pay $91,613 "pursuant to the terms" of the bid bond. This demand was promptly refused.

Appellant commenced this action on November 8. On January 5, after the University's general demurrer had been filed and submitted, it commenced the aforementioned action, against American Insurance Company, of which we are taking judicial notice.[4]

*Discussion*

Section 4201 provides in part that a bidder claiming a mistake "may bring" a chapter 3 action "for the recovery of the amount forfeited." (See fn. 2, *ante.*) The trial court adopted the University's position that this language made the *actual forfeiture* of the bid bond's penal sum a prerequisite to the action, and that appellant failed to state a cause of action because its complaint did not allege this fact.[5]

---

of them. (See §§ 4208, 14350 et seq.; Ed. Code, § 25310 et seq.) The bid bond form required by the University in the present case, and provided by appellant and American Insurance Company, substantially followed the form approved by the Attorney General for use in bidding pursuant to either of the other two laws mentioned. (See Cal. Admin. Code, tit. 11, §§ 37(e) and 57(a).) Thus, it provides that "we, . . . [appellant] . . . as Principal and the American Insurance Company, . . . as Surety, are held and firmly bound unto the . . . University . . . , in the penal sum of ten percent (10%) of amount bid . . . ."

[4]In its complaint in that action (San Francisco Superior Court No. 716794), the University alleges the substance of the foregoing facts and prays for judgment against American Insurance Company in the amount of $91,613 by way of forfeiture on the bid bond. American Insurance Company answered, and cross-complained against the University for declaratory relief, on April 13, 1977. Neither the complaint nor the cross-complaint names appellant as a party to the action. There is no indication in the pleadings therein, or in the record of the present action, that the University has ever made demand for payment of $91,613, or any sum, upon appellant.

[5]In its order sustaining the University's general demurrer without leave to amend, the court stated "that the complaint fails to state a cause of action in that *no amount has been forfeited* as that term is defined in section 4201 . . . ." (Italics added.)

If appellant had accompanied its bid with "security" in the permitted form of a cashier's check or a certified check made payable to the University in the required amount of 10 percent of the bid (see fn. 3, *ante*), or of a cash payment to the University in that amount, the University could have declared a forfeiture when appellant declined to execute the contract. If these events had occurred, appellant's present action would have been "for the recovery of the amount forfeited" in that manner. (See § 4201.) They did not occur because appellant chose the alternative permissible form of a bid bond in the required amount and with American Insurance Company as the surety. That "amount" does not yet stand literally "forfeited," because the University has proceeded no further than to demand (on November 1, 1976) that the surety pay it, to sue the surety for its collection by way of forfeiture, and to proceed against the surety's answer and cross-complaint asserting nonliability. (See fn. 5, *ante.*) The specific question presented is therefore whether a bidder who has used a bid bond to secure his bid, and who has subsequently claimed a mistake in the bid, must be denied the remedy which chapter 3 makes available to one who has posted bid security in cash or its equivalent. For the several reasons next stated, we hold that the remedy is *not* to be denied a bidder in that position, and that appellant has stated a cause of action in exercising it.

In the first place, section 4205 draws an express distinction between "[a] bidder who claims a mistake *or* who forfeits his bid security" and repeats it in referring to "the project on which the mistake was claimed *or* security forfeited." (Italics added in each instance.) According to the plain language of the twice-used disjunctive, section 4205 is susceptible of the single meaning that a bidder "who claims a mistake," and who may maintain a chapter 3 action upon that ground, need not be one who *has forfeited* his "bid security."

That meaning is not as readily perceptible in the language of section 4201, but it may fairly be read there if the clause "for the recovery of the amount forfeited" is construed as *illustrative* of the remedy's objectives but not *exclusive.* That construction is consistent with the chapter's provisions regarding the proof which a bidder claiming mistake must show in the exercise of the remedy. The required proof includes the fact of his mistake, its effect, its cause, and his having given timely notice of it. (§ 4203.) It does not include proof that there has been an actual forfeiture of any "amount" of money.

The indicated construction of section 4201 is also consistent with the principal objective of the chapter 3 remedy, which is to relieve a mistaken bidder of liability *on his bid.* This objective appears from the remedy's nonstatutory predecessor, which was an equitable action for rescission of the bid on the ground of mutual mistake. (*M. F. Kemper Const. Co.* v. *City of L. A.* (1951) 37 Cal.2d 696, 700-702 [235 P.2d 7]. See *A & A Electric, Inc.* v. *City of King* (1976) 54 Cal.App.3d 457, 461-462 [126 Cal.Rptr. 585].) It may reasonably be presumed that the Legislature intended to permit the same result when it enacted chapter 3 in 1971. (Stats. 1971, ch. 1584, § 2, pp. 3195-3196. See *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242]; *A & A Electric, Inc.* v. *City of King, supra,* 54 Cal.App.3d at p. 463.)

The indicated construction of section 4201 also avoids any ostensible disparity with sections 4203 and 4205. ■ It thus comports with the settled canons of statutory interpretation which require that all parts of an enactment must be "harmonized ... in the context of the statutory framework as a whole" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224]) and "that where there are conflicting provisions, the one susceptible to only one meaning will control the one that is susceptible of two meanings, if the statute can thereby be made harmonious." (*REA Enterprises* v. *California Coastal Zone Conservation Com.* (1975) 52 Cal.App.3d 596, 610 [125 Cal.Rptr. 201].)

■ We find a basis for the same construction in the demonstrable purpose of chapter 3, which is to provide a judicial remedy whereby a dispute attending a low bidder's claim of mistake may be *promptly* resolved. (See § 4203, subd. (b), imposing a 5-day limitation upon notice of the claim; § 4202, providing a 90-day period of limitation within which the chapter 3 action must be filed; § 4207, implementing the stated "end that all such actions shall be quickly heard and determined.") In the bid bond situation, the low bidder claiming mistake cannot possibly meet the 90-day deadline if—as in the present case—the issue of forfeiture for excusable mistake must be litigated first.

The potential for indefinite prelitigation delay is aggravated in this case because the creditor demanding forfeiture under the bid bond (i.e., the University) has neither demanded payment by the principal (appellant) nor sued it (see fn. 4, *ante*), and the surety (American Insurance Company) is entitled by law to require the creditor to proceed against the principal first. (Civ. Code, § 2845.) In sum, to require an actual forfeiture

under appellant's bid bond, as a prerequisite to its exercising the chapter 3 remedy, would utterly frustrate the legislative purpose in point of time. We cannot conceive that the Legislature intended to permit this in any case.

We conclude that appellant was not required to allege the fact of forfeiture under its bid bond, that it has stated a cause of action pursuant to chapter 3, and that the issue of forfeiture should be litigated by consolidating appellant's action with the University's suit against American Insurance Company (see fn. 4, *ante*) or by the University's filing a cross-complaint in the present action. (See *M. F. Kemper Const. Co.* v. *City of L. A., supra,* 37 Cal.2d 696 at pp. 699, 706; *A & A Electric, Inc.* v. *City of King, supra,* 54 Cal.App.3d 457 at pp. 461, 466.)

By reason of the foregoing conclusion, other issues raised or suggested in the briefs need not be reached. Upon the remand hereinafter ordered, the trial court will require appellant to amend its complaint to set out all the material facts summarized in this opinion.

The judgment of dismissal is reversed. The cause is remanded to the trial court with directions to proceed consistent with the views expressed in this opinion.

Christian, J., and Ragan, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.