[No. A102035. First Dist., Div. Three. Dec. 28, 2004.]

DIEDE CONSTRUCTION, INC., Plaintiff and Appellant, v.
MONTEREY MECHANICAL CO., Defendant and Respondent.

**COUNSEL**

Bien & Summers, E. Elizabeth Summers, Elliot Bien and Ray Thomas Rockwell for Plaintiff and Appellant.

Bell, Rosenberg & Hughes, Roger M. Hughes and Teresa Jenkins Main for Construction Employers' Association as Amicus Curiae on behalf of Plaintiff and Appellant.

McInerney & Dillon and Timothy L. McInerney for Defendant and Respondent.

## OPINION

**POLLAK, J.—** ■    Plaintiff Diede Construction, Inc. (Diede) was awarded a $12 million contract to renovate the city hall in the City of Livermore (the city). After the bids were opened but before Diede executed a contract with the city, defendant Monterey Mechanical Company (Monterey), a subcontractor Diede had listed in its bid pursuant to Public Contract Code[1] section 4104, informed Diede that its proposal contained a $300,000 mistake, that it would not honor the proposal, and that Diede should seek to be relieved of its bid to the city pursuant to sections 5101 and 5103. Diede nonetheless proceeded to execute a contract with the city and, when Monterey refused to perform, contracted with other subcontractors to perform Monterey's portions of the project. Thereafter, Diede filed a complaint seeking to recover from Monterey, on a theory of promissory estoppel, the difference between Monterey's original bid and the amounts Diede was required to pay the replacement subcontractors. After a bench trial, the court denied Diede's claim because Diede did not attempt to be relieved from its bid to the city after learning of Monterey's mistake. We conclude relief is available under sections 5101 and 5103 only for errors in the general contractor's bid and that Diede was not required to request relief from its bid to the city as a condition of holding Monterey to its bid for the subcontract. Nonetheless, Diede's right to recover on the basis of promissory estoppel is dependant on its proving that it reasonably relied on Monterey's mistaken bid in calculating the amount of its bid to the city, as to which the trial court made no finding. Accordingly, we shall reverse the judgment and remand for a determination of this controlling issue.

### Factual and Procedural Background

Diede is a general contractor that performs large public works projects. Monterey is a contractor specializing in mechanical, plumbing, and heating, ventilation, and air conditioning (HVAC) work. On August 4, 2000, Diede submitted a bid to perform all work on a project to remodel the city hall for $12,739,375. Monterey's bid to Diede to perform the HVAC and certain other work on the project was $1,775,000. Diede listed Monterey as its HVAC subcontractor and allocated 18 percent of the total contract price to its work.[2] Diede learned later that day that it was the low bidder on the job.

The next business day, three days later, Monterey faxed a letter to Diede stating that it had discovered an inadvertent clerical error in its proposal and

---

[1] All statutory references are to the Public Contract Code unless otherwise noted.

[2] The trial court's statement of decision correctly notes that Monterey's share of the total project was not 18 percent. In fact, Monterey's bid constituted only 14 percent of the total amount bid for the contract.

it was therefore withdrawing its bid. The letter explained that Monterey's proposal failed to include the cost of $302,100 for its controls subcontractor. Diede faxed a reply stating that it had based its bid on Monterey's quote and expected Monterey to honor its bid. The next morning, Monterey's attorney sent Diede a letter enclosing two declarations showing how the mistake was made, and advising Diede that if it acted by the next day, it could use the declarations to withdraw its bid under the relief provisions of the Public Contract Code. Diede disagreed that such relief was available for Monterey's mistake, and it did not wish to forfeit its bid bond, lose the substantial sums expended in bidding on the project, or sacrifice the profit and the enhanced professional reputation that it felt it would realize from completing the project. Accordingly, Diede executed the contract with the city for the original bid amount.

After Monterey refused to perform the subcontract work, Diede executed contracts with the next lowest bidders for the portions of the work Monterey was to perform at an increased cost of $467,064, and filed this action to recover these additional costs from Monterey. The trial court found that Monterey's proposal contained a material clerical mistake that satisfied the requirements for relief under the Public Contract Code. Accordingly, it held that Diede had not established the elements of promissory estoppel because Diede's continued reliance on Monterey's bid after receiving notice of the mistake was unreasonable, and that the damages sought "could have been readily prevented if Diede had sought to be relieved of its bid to the [c]ity." Diede filed a timely notice of appeal.

## Discussion

### 1. *Elements of Promissory Estoppel*

A general contractor may recover damages incurred as a result of its reasonable reliance on a subcontractor's mistaken bid under the theory of promissory estoppel. " 'A promise which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise.' [Citation.] This principle is applicable to a proposed subcontractor (promisor) who makes a bid (and with it an implied subsidiary promise to keep the bid open for a reasonable time after the awarding of the general contract) to a general contractor (promisee) who in turn bids on a construction contract with a third person in reliance upon the subcontractor's bid (and subsidiary promise) and is the successful bidder." (*Saliba-Kringlen Corp. v. Allen Engineering Co.* (1971) 15 Cal.App.3d 95, 100 [92 Cal.Rptr. 799] (*Saliba-Kringlen*), citing *Drennan v. Star Paving Co.* (1958) 51 Cal.2d 409

[333 P.2d 757] (*Drennan*).) "As between the subcontractor who made the bid and the general contractor who reasonably relied on it, the loss resulting from the mistake should fall on the party who caused it." (*Drennan, supra*, 51 Cal.2d at p. 416.)

Thus, in order to prevail on its promissory estoppel claim, Diede was required to prove that it had reasonably relied on Monterey's bid to its detriment, and that injustice could be avoided only by enforcing Monterey's promise to perform at the quoted price.

## 2. *Statutory Provisions for the Relief of Bidders*

■ "In 1971 the state Legislature established a comprehensive procedure in connection with *public contracts* . . . to enable a contractor to claim relief from a bid mistake by following certain procedural steps." (*A & A Electric, Inc. v. City of King* (1976) 54 Cal.App.3d 457, 462 [126 Cal.Rptr. 585] (*A & A Electric*).) The derivation of these provisions traces back to more limited legislation first enacted in 1937 (see Stats. 1937, ch. 202, § 2, p. 498) and briefly described in *A & A Electric, supra*, at pages 461–464. These provisions were initially found in Government Code sections 4200 through 4208, but in 1982, without significant change, became chapter 5 of division 2, part 1 of the Public Contract Code, entitled "Relief of Bidders." (§ 5100 et seq.; *Emma Corp. v. Inglewood Unified School Dist.* (2004) 114 Cal.App.4th 1018, 1025 [8 Cal.Rptr.3d 213].) They provide the exclusive means by which a contractor may be relieved from a mistake in a bid submitted to a public entity. (*A & A Electric, supra*, 54 Cal.App.3d at p. 464.)

■ For purposes of the statute, a "bid" is defined as "any proposal submitted to a public entity in competitive bidding" for any type of improvement. (§ 5100, subd. (b).) Section 5101, subdivision (a), provides, "A bidder shall not be relieved of the bid unless by consent of the awarding authority nor shall any change be made in the bid because of mistake, but the bidder may bring an action against the public entity . . . for the recovery of the amount [of the bid bond] forfeited, without interest or costs. . . ." Section 5103 sets forth the grounds for relief under section 5101: "The bidder shall establish . . . that: [¶] (a) A mistake was made. [¶] (b) He or she gave the public entity written notice within five days after the opening of the bids of the mistake, specifying in the notice in detail how the mistake occurred. [¶] (c) The mistake made the bid materially different than he or she intended it to be. [¶] (d) The mistake was made in filling out the bid and not due to error in judgment or to carelessness in inspecting the site of the work, or in reading the plans or specifications."

■ Under these provisions, relief is available to a general contractor whose bid is based on a clerical mistake brought promptly to the attention of

the public agency. Nonetheless, contrary to Monterey's contention and the premise of the trial court's ruling, these provisions do not apply to mistaken bids submitted by a subcontractor to the general contractor. As noted, the statute applies explicitly to proposals submitted "to a public entity in competitive bidding." (§ 5100, subd. (b).) The contractor's bid to the city was such a proposal, but the bids made by subcontractors and materialmen to Diede were not. Other aspects of the statute confirm that it is not intended to apply to mistakes in the bid of subcontractors. Section 5103, subdivision (c) provides that to obtain relief, the bidder must show that the mistake made the bid "materially different than he or she intended it to be." If the bid from the general contractor to the public entity is based on the bid received from a subcontractor, the contractor cannot truthfully represent to the public entity that the bid is different from what it intended. Moreover, the range of materiality would change drastically if it were to be measured against the bid of each subcontractor, rather than against the bid of the general contractor. In the present case, for example, the $300,000 mistake may have been material to Monterey's bid of $1,775,000 (16.9 percent), but it was probably not material to Diede's bid of $12,739,375 (2.3 percent). Likewise, section 5103, subdivision (d), requires that the mistake be made "in filling out the bid," i.e., in filling out the proposal submitted to the public entity. Subcontractors' bids are not submitted to the public entity.

█ Still further, section 5101 recognizes that the public agency may consent to relieve the general contractor of its mistake, but if it refuses to do so, the contractor must bring an action to recover the amount of its bid bond that stands to be forfeited. (See *Balliet Bros. Constr. Corp. v. Regents of University of California* (1978) 80 Cal.App.3d 321, 325–328 [145 Cal.Rptr. 498].) The section provides that if the contractor does not prevail in such an action, it "shall pay all costs incurred by the public entity in the suit, including a reasonable attorney's fee to be fixed by the court." (§ 5101, subd. (a).) Whether the public agency consents or the contractor sues for relief, the contractor is barred from further bidding on the project. (§ 5105.[3]) Nowhere in the history of these provisions is there any indication that the Legislature intended to foist these consequences on an innocent contractor because of a mistake in the bidding of a subcontractor, and it would be highly inequitable to do so. Indeed, even the trial court's ruling implicitly recognizes that Diede was not obligated to risk forfeiture of its bid bond by withdrawing its bid if the city denied a request for relief. (See § 20172.) Moreover, as discussed in part 4, *post*, requiring the general contractor to seek withdrawal of its bid based on a mistake by a subcontractor would impose other adverse

---

[3] Section 5105 provides, "A bidder who claims a mistake or who forfeits his or her bid security shall be prohibited from participating in further bidding on the project on which the mistake was claimed or security forfeited."

consequences on the contractor that there is no reason to suppose were intended by the relief-of-bidders provisions.

The bill analysis performed by the Department of Public Works in connection with the initial 1971 legislation summarized: "The bill provides that a *general contractor* must be relieved of his bid without penalty if he discovers an arithmetic error." (Cal. Dept. Public Works, Business & Transportation Agency, Analysis of Sen. Bill No. 1170 (1971 Reg. Sess.) July 9, 1971, italics added.) The analysis of the Assembly Committee on Commerce and Public Utilities refers only to "inadvertent mistakes made by contractors in filling out their bids on public construction contracts." (Assem. Com. on Commerce and Public Utilities, Analysis of Sen. Bill No. 1170 (1971 Reg. Sess.) Oct. 7, 1971.) Nowhere in the legislative history is there any suggestion that these provisions apply to a mistaken bid submitted by a subcontractor to the general contractor, and certainly nothing supports the view that a general contractor must exercise its rights under this section in order to relieve a subcontractor from its mistakes.

■ Finally, there is merit in the assertion of the amicus curiae that permitting, much less requiring, a general contractor to withdraw a bid to a public agency whenever any subcontractor has made what may be a miniscule mistake in relation to the total cost of construction would threaten to seriously impede the timely and efficient prosecution of public works projects. (Cf. *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 173 [36 Cal.Rptr.2d 521, 885 P.2d 934].) Indeed, if the statute were interpreted to apply in the present case, there is no apparent reason why it would not apply as well to mistaken bids submitted by second or successive tier subcontractors and materialmen, injecting immeasurable uncertainty into the bidding process.

Hence, the premise underlying the trial court's decision is unfounded. Diede was not entitled to be relieved from its bid to the city because of the bidding error by Monterey. That is not to say, however, that the city could not have excused Diede from its bid if it had been so inclined.

3. *Diede's Failure to Request Relief Under Section 5101 Does Not Negate Reasonable Reliance on Monterey's Mistaken Bid*

The trial court concluded that Diede was required to at least seek consent to withdraw its bid under section 5101 in order to establish the reasonable reliance necessary to support its promissory estoppel claim. The court explained, "After having been timely advised by [Monterey] of its mistake; put on notice of the statutory procedure through which relief from the bid could be obtained; having been timely provided with specific and detailed

declarations documenting the nature of the material, clerical error to assist it in obtaining relief within the five days provided by statute; and having independently confirmed that the cost of the HVAC control unit was indeed over $300,000.00 and was omitted from [Monterey's] bid sheet, Diede's alleged continued reliance upon [Monterey's] bid in executing the contract with the [city] was not reasonable or justifiable under the law."

This analysis misconstrues Diede's claim of reliance. Diede acknowledges that it was aware of Monterey's mistake when it signed the contract with the city, and it does not suggest that it relied on the assumption that Monterey would perform at its bid price when it decided to proceed with execution of the contract. Rather, Diede's contention is that it relied on the accuracy of Monterey's quotation when it calculated and submitted its bid to the city. Diede's bid was the lowest and was accepted by the city. Absent a basis for relief, Diede was bound to execute a contract with the city under the terms of the bid or forfeit its bid bond. (*A & A Electric, supra,* 54 Cal.App.3d at p. 461, citing *M. F. Kemper Const. Co. v. City of L. A.* (1951) 37 Cal.2d 696, 700 [235 P.2d 7] [once opened, bid for public construction contract was "in the nature of an irrevocable option, a contract right that a public entity could not be deprived of without its consent unless the requirements for rescission were satisfied"]; § 20172.) Additional or continued reliance with respect to the execution of the contract is not necessary. (*Drennan, supra,* 51 Cal.2d at p. 415 ["When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms"]; *Saliba-Kringlen, supra,* 15 Cal.App.3d at pp. 102–103, 105–106.) Whether or not Diede should have withdrawn its bid when advised of Monterey's error is not relevant to whether Diede relied on Monterey's bid in submitting its bid to the city, much less to the reasonableness of such reliance. Its failure to seek relief under section 5101 relates only to whether injustice could have been avoided without holding Monterey to its mistaken quotation.

### 4. *Enforcement of Monterey's Bid is Necessary to Avoid Injustice*

The trial court concluded that "[u]nder the circumstances of this case, injustice could have been readily prevented if Diede had sought to be relieved of its bid to the [city] and thereby avoided or at least mitigated its losses. It chose not to do so, not because it reasonably doubted the availability of relief or lacked the means or opportunity to seek timely relief as in [*Saliba-Kringlen, supra,* 15 Cal.App.3d 95], but because it preferred instead to pursue a business opportunity it was put on notice was highly questionable." (Fn. omitted.)

While it is of course correct that Diede could have *requested* to be relieved of its bid in light of Monterey's mistake, as discussed in part 1, *ante*, the city

was not required to have consented and Diede was not entitled to be relieved of the forfeiture of its bid bond. Indeed, as noted above, the trial court did not suggest that Diede was obligated to undertake the risks of withdrawing its bid and bringing an action under section 5101 for relief from forfeiture. While there is thus no basis to assume that a request for relief by Diede would have been granted by the city, there are also compelling reasons why Diede should not have been obligated to make such a request. Contrary to the tenor of the trial court's explanation, there was nothing untoward about Diede's desire to proceed with the contract it had been awarded in the competitive bidding process. The bidding process is both time consuming and financially risky. Having been awarded the contract, Diede anticipated earning a profit on the job and also believed that performing this particular public project would enhance its reputation and ability to obtain other jobs in the future. Conceivably Diede would have been entitled to recover its wasted bid preparation costs from Monterey but, as Monterey has acknowledged, Diede could not have recovered its potential lost profits or the intangible added value to its reputation that would have come from completing the project. (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316 [96 Cal.Rptr.2d 747, 1 P.3d 63].) In addition, requiring Diede to withdraw its bid or absorb the costs of Monterey's mistake would be particularly inequitable in light of the fact that section 5105 would have prohibited Diede but not Monterey from further bidding on the city hall project.

*Saliba-Kringlen* confirms that, if Diede reasonably relied on Monterey's mistaken bid in submitting its bid to the city, holding Monterey to its bid is necessary to avoid injustice to Diede. In *Saliba-Kringlen*, the court held that a general contractor was entitled to recover from a subcontractor who refused to honor its mistaken bid the additional costs paid to a substitute subcontractor, despite the fact that the general contractor had not attempted to be relieved of its bid under the relief-of-bidders provisions. The court found no merit in the contention that "the general contractor was required at the very least to seek to be relieved of its bid to the state on the basis of the mistake made by the [subcontractor]." (*Saliba-Kringlen, supra,* 15 Cal.App.3d at p. 105.) Monterey correctly argues that the court there found that the subcontractor had not provided sufficient details about how the mistake occurred to have permitted the general contractor to submit a request for relief in compliance with the statute, an omission that Monterey avoided. However, the court went on to say that even if the general contractor could have successfully avoided forfeiture of its bond, it was not obligated to do so. "[T]he general contractor by 'winning' the lawsuit to be relieved of its bid would not only lose the possibility of making a substantial profit from the contract, but would also incur costs and attorney fees in accomplishing this result." (*Id.* at p. 105.) Finally, the court concluded that " 'injustice can be

avoided only by enforcement of the' bid whenever the general contractor acting in good faith is unable to do the work called for in the bid of the prospective subcontractor (or to get the work done by another subcontractor) for a price at or below the price bid by the prospective subcontractor." (*Id.* at p. 111.)

Here, Diede established that it was required to pay replacement subcontractors substantially more than Monterey's bid, and Monterey does not challenge Diede's good faith in securing the replacements. In accordance with *Saliba-Kringlen*, Diede established that, if it did reasonably rely on Monterey's mistaken bid, the avoidance of injustice requires enforcement of Monterey's promise.

### 5. The Trial Court Failed to Determine Whether Diede's Reliance on Monterey's Bid Was Reasonable

The fact that a general contractor is not obliged to seek to withdraw its bid whenever it is apprised that one of its subcontractors made a mistake in calculating its sub-bid does not mean that general contractors may take unfair advantage of the mistakes of their subcontractors. As the court noted in *Saliba-Kringlen,* if the contractor did rely on the accuracy of the subcontractor's bid in calculating its proposal to the public entity, the benefit of the mistake will not be realized by the general contractor but by the public agency. (*Saliba-Kringlen, supra,* 15 Cal.App.3d at p. 104, fn. 1.) More importantly, under the theory of promissory estoppel, the subcontractor is liable for the costs of the mistake only if the general contractor reasonably relied on the mistaken bid. If the mistake should have been apparent to the general contractor because there was a substantial variance between that bid and the next lowest bid, or for any other reason, the general contractor is not entitled to rely on that bid. (*Drennan, supra,* 51 Cal.2d at p. 416 ["if plaintiff had reason to believe that defendant's bid was in error, he could not justifiably rely on it, and section 90 would afford no basis for enforcing it"]; *Saliba-Kringlen, supra,* 15 Cal.App.3d at pp. 102–103.) Accordingly, in order to recover, Diede must prove that it reasonably relied on Monterey's mistaken proposal.

Because the trial court concluded that Diede's failure to seek the city's consent to withdraw its bid precluded reasonable reliance, the court did not expressly determine whether Diede reasonably relied on Monterey's mistaken bid in calculating the amount of its own bid to the city. The trial court's findings relevant to this issue are inconclusive. The statement of decision reads, "Diede received two other bids from mechanical subcontractors that combined both HVAC and sheet metal work. The next lowest bids were $2,200,000.00 and $2,325,000.00. Due to the differences in the scope of work submitted by the three mechanical subcontractors, Diede contended it was

unable to accurately compare and contrast the line item cost figures among them, although it did undertake some comparison. [Monterey's] proposal was $425,000.00 lower than the next lowest mechanical subcontractor, a substantial variance. [¶] Pursuant to Public Contract Code section 4101, Diede listed [Monterey] as the provider for the HVAC portion of the work and represented to the [city], under oath, that [Monterey's] bid represented 18% of the total contract, or almost $2.3 million. Diede contended at trial that the 18% figure was an error on its part which occurred due to its failure to recalculate percentages in the final round of compiling numbers for the master bid. However, the bid for HVAC and sheet metal submitted by Diede to the [city] was higher than the bid submitted by [Monterey] to Diede." Both parties suggest that these findings support an implied finding in their favor regarding the reasonableness of Diede's reliance. We believe, however, that the court's factual observations do not reach the ultimate question. Whether Diede reasonably relied on Monterey's proposal is a question of fact for the trial court to decide in the first instance, "unless but one inference can be drawn from the evidence." (*Greene v. Wilson* (1962) 208 Cal.App.2d 852, 857 [25 Cal.Rptr. 630].) As the evidence is in conflict, we must remand the matter to the trial court to determine the issue of reasonable reliance.

## Disposition

The judgment is reversed and the matter is remanded for further proceedings in conformity with this opinion. Diede shall recover its costs on appeal.

Corrigan, Acting P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied January 19, 2005.