[Civ. No. 17414. Fourth Dist., Div. Two. Feb. 24, 1977.]

ROY C. HAMPSON, as Executive Officer, etc., et al., Petitioners, v. THE SUPERIOR COURT OF INYO COUNTY, Respondent; HAROLD J. WALKER et al., Real Parties in Interest.

474

**Counsel**

Evelle J. Younger, Attorney General, Robert H. Connett, Assistant Attorney General, Edwin J. Dubiel and Robert B. Keeler, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Leland H. Bray for Real Parties in Interest.

## OPINION

**MORRIS, J.**—This is a petition for a writ of prohibition, to restrain the respondent Superior Court of Inyo County from taking any action, except dismissal thereof, in a writ of mandate proceeding pending in that court, wherein real parties in interest seek to set aside a decision of petitioner California Regional Water Quality Control Board, Lahontan Region. For convenience, the term "petitioners" will be used to refer to petitioners in the present proceeding, who are respondents in the superior court proceeding; the term "respondent" will refer to the superior court; and the term "real parties in interest" or "real parties" will be used to refer to real parties in interest, who are petitioners in the superior court proceeding.

The petitioners contend that the superior court has no jurisdiction to entertain the writ of mandate proceeding, because the real parties in interest had not exhausted their administrative remedies, and because the real parties in interest are barred by the applicable statute of limitations.

Petitioners are (1) Roy C. Hampson, Executive Officer, and (2) California Regional Water Quality Control Board, Lahontan Region, which is charged with administering provisions of Water Code sections 13201-13360 in the area which includes the land owned by real parties in interest.

On July 12, 1976, real parties in interest filed with respondent superior court a petition for writ of mandate, ordering the petitioner, regional board, to set aside its decision of April 22, 1976, denying real parties' request for exemption from waste discharge prohibition adopted by the petitioner on May 8, 1975.

Petitioners herein filed a general demurrer to that petition (Code Civ. Proc., §§ 430.10, 1089), on the ground that real parties in interest had failed to exhaust their administrative remedies by not appealing the decision of the regional board of April 22, 1976, to the state board as required by Water Code section 13320; and on the ground that, insofar as the petition sought to challenge the waste discharge prohibition adopted by the regional board on May 8, 1975, and by the state board on May 15, 1975, the action is barred by the 30-day limitation period provided by Water Code section 13330.

On September 20, 1976, respondent superior court overruled the demurrer. By its ruling, respondent determined that it had jurisdiction to hear the petition for writ of mandate, and intends to proceed with a hearing on the merits.

It should be clearly understood at the outset that the merits of the dispute between the parties are not before us in this proceeding.

The theory upon which the petition for writ of prohibition is sought is that the superior court has no jurisdiction to hear the case on its merits because the real parties failed to exhaust their administrative remedies provided by statute.

The threshold question, whether the failure of a petitioner to exhaust an administrative remedy deprives the trial court of jurisdiction to consider his petition for a writ of mandate, has been resolved affirmatively by the California Supreme Court.

In *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715], the Supreme Court issued a writ of prohibition, restraining the District Court of Appeal from enforcing a writ of mandate and restraining order against payment of unemployment benefits under the unemployment insurance act, prior to the exhaustion by the petitioning employers of their administrative remedy of appeal to the unemployment commission. After an exhaustive analysis of "jurisdiction" as related to the issuance of a writ of prohibition to prevent the exercise of unauthorized power by a subordinate tribunal, the court concluded, ". . . exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." (*Id.,* at p. 293, see also *Alexander* v. *State Personnel Bd.* (1943) 22 Cal.2d 198, 199-200 [137 P.2d 433].)

In *State of California* v. *Superior Court* 1944 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281], the real party in interest had applied for, and been denied, a permit from the ·California Coastal Zone Conservation Commission to develop land within the coastal zone as defined in the California Coastal Zone Conservation Act of 1972 (Pub. Resources Code, § 27000 et seq.). Thereafter they had filed a petition in superior court seeking, among other things, a writ of mandamus to compel the commission to "affirm" that real party in interest had a vested right to develop its property without permit, and a declaration that it was entitled to a permit from the commission or that it had a vested right to proceed with its development without a permit.

When demurrers to these and other causes of action were overruled, the commission sought review in the Supreme Court. The Supreme Court concluded that the demurrer should have been sustained as to the cause of action for writ of mandate to "affirm" real party's vested right, stating: "Although Veta asserts that the Commission had the duty to recognize its vested right, it admittedly did not seek such determination from the Commission but, rather, elected to apply for a permit. The Commission has enacted detailed regulations and procedures for the determination of claims of exemption on the ground of vested rights. (Cal. Admin. Code, tit. 14, § 13001 et seq.) Since Veta elected not to avail itself of these procedures it cannot now seek by mandate to compel the Commission to 'affirm' its claim of exemption. [Fn. omitted.]" (*State of California* v. *Superior Court, supra,* 12 Cal.3d 237, 248.)

As to the cause of action for declaratory relief, the court held as follows, "Although Veta alleges the existence of such a controversy with respect to whether it has acquired a vested right, it is clear from the face of the petition that it has not sought a vested rights determination from the Commission nor been denied such a determination. Under these circumstances, we conclude that Veta has not alleged an actual controversy within the meaning of section 1060 of the Code of Civil Procedure so as to entitle it to declaratory relief." (*Id.,* at p. 249.)

In *South Coast Regional Com.* v. *Gordon* (1977) 18 Cal.3d 832 [135 Cal.Rptr. 781, 558 P.2d 867] the Supreme Court reaffirmed and extended the holding in *State of California* v. *Superior Court, supra,* by holding that a defendant must first exhaust his administrative remedies by presenting his claim of exemption to the commission as a condition of raising the claim in the trial court, even as a defense in an action by the coastal commission to enjoin a violation of the 1972 Coastal Zone Conservation Act and to recover civil penalties thereunder.

We must therefore consider the petition for writ of mandate filed in the superior court and the matters judicially noticed by the trial court, in the light of the administrative procedures provided by statute, to determine whether there were administrative remedies which should have been pursued in the instant action.

The relevant allegations contained in the petition for writ of mandate are as follows:

On May 18, 1964, one of the real parties in interest, in connection with a proposed subdivision in the area in question, filed a report of waste discharge with the petitioner. The petitioner responded by adopting resolution 64-8 which set waste discharge requirements for the area based upon the tentative map and report of waste discharge. (Presumably the report was filed and the requirements set pursuant to former section 13054 of the Water Code. [Stats., 1959, ch. 1299, § 15, pp. 3452-3453.] Such reports are now required by Water Code section 13260.)

Although the initial subdivision failed, other tract maps (including Mustang Mesa Estates, tracts one and two) were filed, and substantial construction activity took place between 1964 and 1974. The petition is silent as to whether real parties in interest ever filed additional waste discharge reports with the regional board, or ever requested the board to revise or rescind the waste discharge requirements pursuant to Water Code section 13263, subdivision (e) (or former § 13054).

However, on April 24, 1975, petitioner regional board held a duly noticed public hearing pursuant to Water Code section 13244 in Bishop, California, to consider adoption of a waste discharge prohibition for the Mustang Mesa area, to be included in the proposed water quality control plan for the South Lahontan Basin. At the hearing regional board's staff and property owners produced evidence relating to the adequacy of planned and existing disposal systems. Following the April 24, 1975, hearing, the matter was continued to May 8, 1975, and on that date the regional board adopted resolution 75-5, comprising the prohibition here in issue, as an addendum to the water quality control plan for the South Lahontan Basin. The resolution prohibits new construction of individual septic tanks and leach field systems in the area, after approval of the Comprehensive Water Quality Control Plan for the South Lahontan Basin by the State Water Resources Control Board, and provides for a phase out of existing individual systems by January 1, 1985.

The resolution contains a provision permitting the executive officer to grant exemptions from the prohibition upon proof by the dischargee that the proposed design will not result in pollution or nuisance.

On May 15, 1975, the California Water Resources Control Board (state board), held a public hearing preliminary to approval pursuant to Water Code section 13245. Following the hearing the state board by resolution No. 75-57 approved Part I of the water quality control plan for the South Lahontan Basin (6B) pursuant to Water Code section 13245

"with the understanding that the stipulated control actions set forth in Chapter V are to be implemented, but that identified actions set forth in Chapter V other than control actions are recommendations to be taken under consideration by the State Board, Regional Board, and other appropriate agencies."

Based upon evidence submitted to it, the trial court took judicial notice of the fact that Lahontan Regional Board resolution 75-5, adopted May 8, 1975, was a "control action" which was approved for implementation by the state board on May 15, 1975, in state board resolution 75-57.

Although not included in real parties' petition for writ of mandate in superior court, real parties have stated, in their replication to the petition for writ of prohibition in this court, that notice of the state board action was received by real parties by letter on June 16, 1975. They deny, and petitioner does not allege, service of a copy of decision and order issued by state board. Real parties did not file a petition for writ of mandate within 30 days of this "notice." Instead, real parties applied to the regional board for exemption under the terms of the prohibition contained in regional board resolution 75-5. Petition for writ of mandate was filed on July 12, 1976.

Between June 1975 and March 1976, real parties submitted information necessary for determination of their exemption request. After a public hearing, the regional board denied the request for exemption on April 22, 1976. Real parties were given notice of this action by letter dated May 4, 1976. Although this letter is not included in the exhibits, it is alleged to have contained a notice that this decision could be "appealed" to the state board by the property owners.

The balance of the allegations in real parties' petition in superior court relate to the validity of the regional board action of May 8, 1975, abuse of discretion by the regional board in denying the exemption request on April 22, 1976, and irreparable injury.

In response to petitioners' argument that the real parties had failed to exhaust administrative remedies, thus depriving the trial court of jurisdiction, the real parties contend that an agreement between real parties in interest and petitioner, Executive Officer Hampson, on June 23, 1975, was a final administrative decision which terminated the administrative proceedings; and that said petitioner acted in bad faith in

presenting the agreement to the regional board for approval; and that this agreement operated as an estoppel against the regional board.

In response to petitioners' argument that real parties are barred by their failure to petition the court for a writ of mandate within 30 days after service of a copy of the decision and order of the state board of May 15, 1975, real parties contend that they were not notified that the state board had approved the prohibition order and that petitioner is estopped from asserting the defense of the statute of limitations.

Since the petition for writ of mandate in superior court does not seek administrative review of the order of the state board, it is unnecessary for this court to consider the applicability of the 30-day limitation except as it is incidental to a discussion of the exhaustion of the administrative remedy provided by statute.

We, therefore, confine our consideration to whether the superior court was without jurisdiction by reason of real parties' failure to exhaust any administrative remedy with respect to the regional board's denial of exemption on April 22, 1976.

Since that denial was the culmination of several administrative actions affecting the property involved in the instant action, it is necessary to delineate the statutory authority for administrative actions conducing that decision.

As we have seen, the initial action relating to this property was the May 18, 1964, report of waste discharge filed pursuant to former Water Code section 13054.[1] That section required any person proposing to discharge sewage, other than into a community sewer system, to file a discharge report, unless the report was waived by the regional board. The section required the regional board to prescribe requirements and provided that such requirements could be revised from time to time. Section 13054.1 required any person discharging sewage, other than into

---

[1] Section 13054 reads, in pertinent part, as follows:
"Any person proposing to discharge sewage or industrial waste within any region, other than into a community sewer system, shall file with the regional board of that region a report of such proposed discharge. . . . The regional board, after any necessary hearing, shall prescribe requirements as to the nature of such proposed or existing discharge with relation to the conditions existing from time to time in the disposal area or receiving waters upon or into which the discharge is made or proposed and notify the person making or proposing the discharge of its action. Such requirements may be revised from time to time. . . ." (Stats. 1959, ch. 1299, § 15, p. 3452.)

a community sewer system, to file with the regional board a report of any material change. (Stats. 1959, ch. 1299, § 16, p. 3453.) In 1969 the Water Code was amended so that these requirements are now included in sections 13260, 13263, and 13264.[2] Therefore, at all times in question in this case there was a duty upon real parties in interest to report any discharge of sewage and any proposed change in discharge that could affect the quality of water in the state; and there was a corresponding right and duty in the regional board to prescribe requirements and to revise those requirements from time to time. Section 13263 provides that the requirements shall implement water quality control plans, if any have been adopted, and authorizes the board to prescribe requirements even though no discharge report has been filed.

Therefore, regional board could have prescribed new requirements for discharge for the property in question pursuant to section 13263. Section 13263 makes it quite clear that the regional boards are authorized to proceed to establish discharge requirements even though a regional water control plan has not been adopted. When a plan has been adopted the discharge requirements are to implement the plan. In the absence of a plan, section 13263 lists the factors to be considered.

---

[2]Section 13260 reads, in pertinent part, as follows:

"(a) Any person discharging waste or proposing to discharge waste within any region that could affect the quality of the waters of the state, other than into a community sewer system, . . . shall file with the regional board of that region a report of the discharge, containing such information as may be required by the board. . . .

"(b) Every such person discharging waste shall file with the regional board of that region a report of any material change or proposed change in the character, location, or volume of the discharge. . . ."

Section 13263 reads, in pertinent part, as follows:

"(a) The regional board, after any necessary hearing, shall prescribe requirements as to the nature of any proposed discharge, existing discharge, or material change therein, . . . The requirements shall implement relevant water quality control plans, if any have been adopted, and shall take into consideration the beneficial uses to be protected, the water quality objectives reasonably required for that purpose, other waste discharges, the need to prevent nuisance . . . .

"(d) The board may prescribe requirements although no discharge report has been filed.

"(e) Upon application by any affected person or on its own motion, the regional board may review and revise requirements. All requirements shall be reviewed periodically."

Section 13264 reads, in pertinent part, as follows:

"(a) No person shall initiate any new discharge of waste or make any material change in any discharge prior to the filing of the report required by Section 13260 nor shall any such person do so thereafter and prior to: (1) the issuance of waste discharge requirements pursuant to Section 13263, (2) the expiration of 120 days after his compliance with Section 13260, or (3) the regional board's waiver pursuant to Section 13269, whichever of (1), (2), or (3) occurs first. . . ."

Orders prohibiting discharge are subject to similar alternatives. Section 13243 provides: "A regional board, in a water quality control plan or in waste discharge requirements, may specify certain conditions or areas where the discharge of waste, or certain types of waste, will not be permitted."

If the regional board had proceeded by way of waste discharge requirements under section 13263, the real parties in interest would have had the right to appeal to the state board within 30 days of the regional board's action. (Wat. Code, § 13320.) Following the state board decision on appeal pursuant to section 13320, an aggrieved party has 30 days within which to petition the superior court for a writ of mandate to review the decision of the state board. (Wat. Code, § 13330, subd. (a).)[3] However, the regional board did not proceed pursuant to section 13263 but chose instead to adopt resolution 75-5 as an *addendum to the water quality control plan.* Therefore, the action was not effective until approved by the state board. (Wat. Code, § 13245.) The date of state board approval was May 15, 1975, the date the regional board resolution was approved for implementation by the state board resolution 75-57. This action was taken pursuant to Water Code section 13245.[4]

This was not a decision and order issued by the state board under section 13320, and was therefore not subject to the 30-day limitation therein provided. Section 13320[5] refers to review of regional board

---

[3]Water Code section 13330, subdivision (a) provides:

"Within 30 days after service of a copy of a decision and order issued by the state board under Section 13320, any aggrieved party may file with the superior court a petition for a writ of mandate for review thereof. Failure to file such an action shall not preclude a party from challenging the reasonableness and validity of a decision or order of a regional board or the state board in any judicial proceedings brought to enforce such decision or order or for other civil remedies."

[4]Section 13245 reads as follows:

"A water quality control plan, or a revision thereof adopted by a regional board, shall not become effective unless and until it is approved by the state board. The state board may approve such plan, or return it to the regional board for further consideration and resubmission to the state board. Upon resubmission the state board may either approve or, after a public hearing in the affected region, revise and approve such plan."

[5]Section 13320 reads, in relevant part, as follows:

"(a) Within 30 days of any action or failure to act by a regional board under subdivision (c) of Section 13225, Article 4 (commencing with Section 13260) of Chapter 4 of this division, Chapter 5 (commencing with Section 13300) of this division, Chapter 5.5 (commencing with Section 13370) of this division, Chapter 7 (commencing with Section 13500) of this division, or Division 7.5 (commencing with Section 14000), any aggrieved person may petition the state board to review such action or failure to act. In case of failure to act, the 30-day period shall commence upon refusal of the board to act, or 60 days after request has been made to the board to act. The state board may, on its own motion, at any time review such action or failure to act and also any failure to act under Article 3 (commencing with Section 13240) of Chapter 4 of this division. . . ."

actions under certain enumerated sections and chapters not including section 13245 of chapter 4, the section providing for approval of a water quality control plan.

The real parties in interest were not aggrieved and therefore under no compulsion to petition the superior court to attack the water quality control plan (to the extent it was approved) until they had applied for the exemption authorized by the "control action." Thus we come to the administrative act which precipitated the petition for writ of mandate in the superior court, the denial by the regional board of real parties' application for exemption.

■ Real parties' contention that· an agreement between them and petitioner Hampson terminated the administrative procedure, or operated as an estoppel against the regional board action is without merit.

Although resolution 75-5 which was adopted as an addendum to the regional water quality control plan authorized the executive officer to grant exemptions provided certain conditions were met, it did not, and could not, delegate its power and duty to issue, modify, or revoke any water control plan, water quality objection or waste discharge requirement. (Wat. Code, § 13223.)[6]

■ "Any person dealing with a state agency is chargeable with knowledge of all of the powers possessed or which may be legally exercised by the officers in charge of such agency, and all acts of such officers which go beyond the scope of the power vested in the officer exercising the functions of such agency are void, and knowledge must be presumed to be had, not only of the extent of the power, but also of the mode of its exercise." (*Lertora* v. *Riley* (1936) 6 Cal.2d 171, 178 [57 P.2d 140]; *Bottoms* v. *Madera Irr. Dist.* (1925) 74 Cal.App. 681, 695 [242 P. 100].) Therefore, the first requisite to an estoppel, the element of reliance is not present. (See *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 494 [91 Cal.Rptr. 23, 476 P.2d 423].) ■ Furthermore, the doctrine of estoppel will not be invoked against a governmental agency where it would operate to defeat the operation of a policy adopted to protect the public interest. (*County of San Diego* v. *Cal. Water etc. Co.* (1947) 30 Cal.2d 817, 826

[6]Section 13223 reads, in pertinent part, as follows:
"(a) Each regional board may delegate any of its powers and duties vested in it by this division to its executive officer excepting only the following: (1) the promulgation of any regulation; (2) the issuance, modification, or revocation of any water quality control plan, water quality objectives, or waste discharge requirement; . . ."

[186 P.2d 124, 175 A.L.R. 747], and cases cited therein.) Consequently, even though the resolution authorized the executive officer to make the initial determination as to whether the landowner had met the prerequisites for an exemption, the regional board could not relinquish its right and duty to overrule such preliminary determination if it determined that to grant an exemption would constitute a modification of the water control plan or the waste discharge requirement included in that plan.[7]

■ In acting upon real parties' application for exemption from the waste discharge prohibition contained in the resolution, the regional board was exercising its authority pursuant to Water Code section 13263 which provides in subdivision (e): "Upon application by any affected person or on its own motion, the regional board may review and revise [discharge] requirements. . . ."

Such action is subject to review by the state board pursuant to section 13320 within 30 days of the action, upon petition of any person aggrieved thereby.

We therefore conclude that by their failure to seek state board review of the denial order of April 22, 1976, the real parties in interest failed to exhaust their administrative remedy.

This case presents a classic example of the reason for the doctrine of exhaustion of administrative remedies.

■ The state water quality control legislation is designed to regulate the factors and activities which may affect the quality of the waters of the state, in order to protect the quality of water for the use and enjoyment of all of the people of the state. To this end, the Legislature has established a legislative procedure for the development of a statewide program of water quality control. The plan provides for regional administration within the framework of statewide coordination and policy. (Wat. Code, § 13000.)

The detailed provisions for implementation and enforcement of water quality control legislation make it clear that the Legislature intended that decisions regarding such matters be made in the first instance by the administrative agencies established for that purpose.

---

[7]Although we have discussed the incapacity of the executive officer to make a binding agreement as alleged by real parties in interest, this is not to suggest that this court finds that any agreement existed.

The statutory procedures include the right to notice and hearing at each stage of the development and enforcement of water control programs. Until that procedure has been exhausted, the courts should not interfere.

As the Supreme Court emphasized in *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d 280, ". . . to permit the initial consideration of these matters by the courts would not only preclude the efficient operation of the acts, but would overwhelm the courts with cases of a technical, specialized character, and seriously impair their capacity to handle their normal work." (*Id.,* at p. 306; see also *Myers* v. *Bethlehem Corp.,* 303 U.S. 41 [82 L.Ed. 638, 58 S.Ct. 459] and cases cited therein.)

Both precedent and reason require that real parties in interest exhaust the administrative remedies provided by statute before seeking the aid of the courts.

Let a peremptory writ of prohibition issue restraining the respondent superior court from proceeding with any further action in this matter, except to discharge the alternative writ heretofore issued, and dismissal thereof.

Gardner, P. J., and Kaufman, J., concurred.