[No. C015569. Third Dist. Dec. 29, 1993.]

CAL-AIR CONDITIONING, INC., Plaintiff and Respondent, v.
AUBURN UNION SCHOOL DISTRICT, Defendant;
M. P. ALLEN GENERAL CONTRACTORS, Real Party in Interest and
Appellant.

## COUNSEL

Downey, Brand, Seymour, & Rohwer, Thomas N. Cooper and Robin R. Raff for Real Party in Interest and Appellant.

Diepenbrock, Wulff, Plant & Hannegan, D. Michael Schoenfeld and Charity Kenyon for Plaintiff and Respondent.

## OPINION

DAVIS, J.—In this action, we interpret certain provisions of the "Subletting and Subcontracting Fair Practices Act" (hereinafter, the Act) found in the Public Contract Code. (Pub. Contract Code, § 4100 et seq.; all subsequent references to sections are to this code unless otherwise specified.) The Act addresses the practices of bid shopping by a general contractor and bid peddling by a subcontractor on public improvements. (§ 4101; *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 725-726 [79

Cal.Rptr. 319, 456 P.2d 975].) These practices often result in financial difficulties for subcontractors and poor workmanship on public improvements. (§ 4101.)[1]

The statutory provisions at issue in this case cover a prime contractor's attempt to substitute one subcontractor for another based on an "inadvertent clerical error" in the prime contractor's winning bid proposal. (§§ 4107, subd. (a)(5); 4107.5.) Section 4107.5 specifies that within two working days after the awarding authority opens the prime bids, the prime contractor, as a condition to assert a claim of inadvertent clerical error, shall give written notice of the error to the awarding authority and a copy of that notice to the subcontractor allegedly listed in error. Here, the prime contractor gave the awarding authority the required written notice but *orally* notified by phone the allegedly erroneously listed subcontractor the day after the prime bids were opened by the awarding authority; the prime contractor then sent written notice to the erroneously listed subcontractor on the fourth working day after the bid opening.

Section 4107.5 also specifies that the awarding authority shall investigate disputed claims of the parties regarding the issue of the error and shall hold a public hearing to determine the validity of those claims. This determination is to be based on the facts contained in affidavits or in declarations submitted by the parties and on sworn testimony at the hearing. None of the parties in this case submitted affidavits or declarations and no sworn testimony was taken. At the hearing, the prime contractor provided the awarding authority with copies of its bid sheets and explained how the error occurred. The only specific issue raised by the allegedly erroneously listed subcontractor in these administrative proceedings concerned the prime contractor's failure to provide the required two-day written notice. Both sides were given the opportunity at the hearing to present any other evidence. The subcontractor allegedly listed in error never claimed in the administrative proceedings that it was denied a full and fair opportunity to present its case and it never objected to the lack of affidavits or declarations. And in the administrative proceedings, this subcontractor never disputed that the prime contractor had in fact made the claimed inadvertent clerical error.

---

[1] "Bid shopping is the use of the low bid already received by the general contractor to pressure other subcontractors into submitting even lower bids. Bid peddling, conversely, is an attempt by a subcontractor to undercut known bids already submitted to the general contractor in order to procure the job. The statute is designed to prevent only bid shopping and peddling that takes place after the award of the prime contract. . . . Bid peddling and shopping prior to the award of the prime contract foster the same evils, but at least have the effect of passing the reduced costs on to the public in the form of lower prime contract bids." (*Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc., supra,* 71 Cal.2d at p. 726, fn. 7, citations omitted.)

Under these circumstances, we conclude the trial court erred in determining that the awarding authority could not consent to the substitution of subcontractors. The trial court's legal determination was based on the prime contractor's failure to provide the two-day written notice and failure to submit an affidavit or declaration. We hold that the doctrine of substantial compliance applies to the two-day written notice provision and that the affidavit provision is to be accorded "directory" rather than "mandatory" effect. Accordingly, we reverse.

## BACKGROUND

The relevant facts are undisputed. On May 26, 1992, Auburn Union School District (District) solicited bids for an addition to the Skyridge School. The prime contractors had to submit their bids to the District by 3 p.m. on May 26, 1992. M.P. Allen (MPA), a general contractor, was submitting a prime bid on the Skyridge project. At 2:35 p.m. on May 26, Bangar Contractors Corp. (Bangar), a subcontractor, submitted to MPA a bid of $140,990 to do the heating, ventilation and air conditioning (HVAC) work for the project. Bangar's bid contained a qualification that it had to be confirmed if it was at least 10 percent lower than the next lowest bid.

At 2:45 p.m. on May 26, Cal-Air Conditioning, Inc. (Cal-Air) submitted a bid to MPA for the HVAC subcontracting work at Skyridge. Cal-Air's bid, which apparently was the next lowest bid to Bangar's, was for $190,680; Bangar's bid was more than 10 percent lower than Cal-Air's, triggering Bangar's qualification.

Shortly after the prime bids were opened at 3 p.m. on May 26, MPA's prime bid of $2,213,000, which listed Cal-Air as the HVAC subcontractor, was determined to be the low bid. Subsequently, MPA was awarded the Skyridge contract.

At 8:45 a.m. on the morning after the prime bids were opened by the District (May 27), MPA's project manager "faxed" a letter to the District's representative (the District's architect on the Skyridge project), which stated in part:

"This is to confirm my telephone notice to you late yesterday afternoon whereby I advised you of a minor clerical error in our bid. In the last minute flurry of receiving subcontractor bids, we received the bid of Bangar Contractors Corp. for the HVAC work. Their bid was approximately $50,000 lower than that of Cal-Air Conditioning Company, whose name we had already entered on the Subcontractor Listing. The monetary change was effected in our bid, but the change of company on the Listing was not.

"We are available to meet with you and/or the Owner, at your respective convenience, to show you the evidence which demonstrates how the above error occurred."

Also on May 27, MPA telephoned Cal-Air. MPA explained that it had inadvertently listed Cal-Air as the HVAC subcontractor on the prime bid and requested that Cal-Air withdraw its HVAC bid. Cal-Air refused.

In a letter from MPA dated June 1, 1992, but received by Cal-Air on June 2, MPA enclosed a copy of the May 27 letter it had sent to the District's representative and informed Cal-Air as follows:

"Reference is made to our several telephone conversations since Thursday [May 28] regarding our disclosure to you that we had made an Inadvertent Clerical Error on our Subcontractor Listing in the submission of our bid.

"Pursuant to the above, we enclose copies of our notice to the School District's architect advising of the error and the particulars thereto."

The second of June was five working days after the District had opened the prime bids on May 26.

In timely fashion, on June 2, Cal-Air sent a written objection to the District regarding MPA's proposed substitution of Bangar for the HVAC work. This objection stated in part: "If [MPA] is alleging that this is a clerical error in the listing of subcontractors, [MPA] must comply with the substitution requirements listed in Public Contract Code 4107.5. We will insist that the District enforce and follow the requirement strictly and not deviate from the requirements for the benefit of a lower bid. If any actions are taken deviating from the requirements in Public Contract Code 4107.5 it may be necessary for Cal-Air to request a written mandate under the CCP 1094.5, challenging local agency's decision. Regardless of the reason for the substitution or assignment and subletting changes being requested, the two working day written notice requirement to both subcontractors and the owner did not occur. We have only received written notice, today June 2, 1992. We look forward to completing a successful project with [MPA]."

On July 14, 1992, the District's Board of Trustees held a noticed public hearing to decide whether MPA could replace Cal-Air with Bangar. The minutes of that hearing recite in pertinent part:

"Board President Erwin Stark opened the Public Hearing: . . .

"Representatives from M.P. Allen - Mike Allen and John Soul provided the board with copies of their bid sheets and explained how the error occurred.

"Mike Christensen, a representative from Cal-Air, addressed the board stating that the process used did not comply with Public Contract Code 4107.5 because M.P. Allen did not send them a written notice of the error within two (2) working days after the bids were opened.

"President Stark stated that the district had received a letter from Richard Wyatt concerning a clerical error. [Wyatt is the District's architect on the Skyridge project to whom MPA had 'faxed' its May 27 letter.]

"President Stark asked if there was any other evidence. No other evidence was presented.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Trustee LaBouff stated that he felt there were two different parts to the conflict, i.e. (1) Was there a clerical error? and (2) Can the two day notice be waived?

"The trustees were provided with copies of the correspondence between the parties with regard to the error."

The trustees then approved the substitution.

Neither MPA nor Bangar nor Cal-Air ever submitted an affidavit or a declaration for this hearing. Nor was any testimony taken at the hearing.

In August of 1992, Cal-Air filed a petition for administrative writ of mandate pursuant to Code of Civil Procedure section 1094.5. In that petition, Cal-Air alleged that MPA failed to notify Cal-Air in writing of its claimed inadvertent clerical error within two working days and failed to submit affidavits to the District in support of its claimed error. These failures, Cal-Air alleged, constituted violations of section 4107.5 and precluded the District from lawfully consenting to the substitution of Bangar for Cal-Air.

The trial court agreed with Cal-Air and granted the writ of administrative mandate, reasoning: "Not only did the prime contractor not comply with the 2-day written notice requirement of Public Contract Code 4107.5, but more importantly, there is nothing in the Administrative Record to show that the contractor and the alleged intended subcontractor complied with the requirement that affidavits be filed to support the claim of inadvertent clerical error. This is not just an issue of substantial compliance; there is nothing in the record to indicate that this was complied with at all. Per 4107.5, this is a prerequisite to the consent by the District to the substitution."

## Discussion

### 1. *The Statutes and the Standard of Review*

The two statutes at issue in this case are Public Contract Code sections 4107, subdivision (a)(5), and 4107.5 (both of which were formerly in the Government Code under the same section designations).

Section 4107, subdivision (a)(5), provides:

"No prime contractor whose bid is accepted shall:

"(a) Substitute any person as subcontractor in place of the subcontractor listed in the original bid, except that the awarding authority, or its duly authorized officer, may, except as otherwise provided in Section 4107.5, consent to the substitution of another person as a subcontractor in any of the following situations:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) When the prime contractor demonstrates to the awarding authority, or its duly authorized officer, subject to the further provisions set forth in Section 4107.5, that the name of the subcontractor was listed as the result of an inadvertent clerical error.

". . . . . . . . . . . . . . . . . . . . . . . . . .

"Prior to approval of the prime contractor's request for the substitution the awarding authority, or its duly authorized officer, shall give notice in writing to the listed subcontractor of the prime contractor's request to substitute and of the reasons for the request. . . .

"If written objections are filed [by the listed subcontractor], the awarding authority shall give notice in writing of at least five working days to the listed subcontractor of a hearing by the awarding authority on the prime contractor's request for substitution."

Section 4107.5 specifies:

"The prime contractor as a condition to assert a claim of inadvertent clerical error in the listing of a subcontractor shall within two working days

after the time of the prime bid opening by the awarding authority give written notice to the awarding authority and copies of that notice to both the subcontractor he or she claims to have listed in error and the intended subcontractor who had bid to the prime contractor prior to bid opening.

"Any listed subcontractor who has been notified by the prime contractor in accordance with this section as to an inadvertent clerical error shall be allowed six working days from the time of the prime bid opening within which to submit to the awarding authority and to the prime contractor written objection to the prime contractor's claim of inadvertent clerical error. Failure of the listed subcontractor to file the written notice within the six working days shall be primary evidence of his or her agreement that an inadvertent clerical error was made.

"The awarding authority shall, after a public hearing as provided in Section 4107 and in the absence of compelling reasons to the contrary, consent to the substitution of the intended subcontractor:

"(a) If (1) the prime contractor, (2) the subcontractor listed in error, and (3) the intended subcontractor each submit an affidavit to the awarding authority along with such additional evidence as the parties may wish to submit that an inadvertent clerical error was in fact made, provided that the affidavits from each of the three parties are filed within eight working days from the time of the prime bid opening, or

"(b) If the affidavits are filed by both the prime contractor and the intended subcontractor within the specified time but the subcontractor whom the prime contractor claims to have listed in error does not submit within six working days, to the awarding authority and to the prime contractor, written objection to the prime contractor's claim of inadvertent clerical error as provided in this section.

"If the affidavits are filed by both the prime contractor and the intended subcontractor but the listed subcontractor has, within six working days from the time of the prime bid opening, submitted to the awarding authority and to the prime contractor written objection to the prime contractor's claim of inadvertent clerical error, the awarding authority shall investigate the claims of the parties and shall hold a public hearing as provided in Section 4107 to determine the validity of those claims. Any determination made shall be based on the facts contained in the declarations submitted under penalty of perjury by all three parties and supported by testimony under oath and subject to cross-examination. The awarding authority may, on its own motion or that of any other party, admit testimony of other contractors, any

bid registries or depositories, or any other party in possession of facts which may have a bearing on the decision of the awarding authority."

The relevant facts in this case are undisputed. "It is well settled that the interpretation and application of a statutory scheme to an undisputed set of facts is a question of law . . . which is subject to de novo review on appeal . . . ." (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624], citations omitted.) We first turn to MPA's failure to give written notice to Cal-Air within two working days after the prime bids were opened by District.

### 2. The Two-day Written Notice

MPA's failure to provide this notice, as specified in section 4107.5, formed the crux of Cal-Air's claim in the administrative proceedings. (See the first two paragraphs of § 4107.5, quoted *ante*, p. 666.)

Preliminarily, we reject any argument that the District was without the jurisdiction or lawful authority to entertain MPA's claim of error because MPA failed to give Cal-Air the section 4107.5-specified two-day written notice. The District's jurisdiction or authority to hear MPA's claim is derived from the grant of hearing authority set forth in sections 4107 and 4107.5, and is not destroyed if the claiming party fails to give two-day written notice but instead provides a notice that satisfies all of the statutory objectives of the two-day notice provision. (See *Crane* v. *Board of Supervisors* (1936) 17 Cal.App.2d 360, 367-370 [62 P.2d 189].)

MPA's "failure to comply" with the two-day written notice requirement of section 4107.5 raises the issues of whether the requirement is an obligatory or permissive one and whether the requirement can be met through substantial compliance. As we shall explain, the requirement is an obligatory one that can be met through substantial compliance, and MPA's notice to Cal-Air did substantially comply with the requirement.

The term "obligatory" refers to an obligatory procedure which a governmental entity or a private person is required to follow as opposed to a permissive procedure which such an entity or person may follow or not as it chooses. (See *People* v. *McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382]; *Morris* v. *County of Marin* (1977) 18 Cal.3d 901, 908 [136 Cal.Rptr. 251, 559 P.2d 606]; see also 3 Sutherland, Statutory Construction (5th ed. 1992) § 57.14, 57.15, pp. 36-42.) The pertinent language of section 4107.5—"The prime contractor as a condition to assert a claim of inadvertent clerical error . . . shall within two working days . . .

give written notice"—is obligatory in nature: it sets forth a requirement that must be followed rather than followed at one's choosing. Therefore, we turn to the issues regarding substantial compliance.

The court in *A & A Electric, Inc.* v. *City of King* (1976) 54 Cal.App.3d 457 [126 Cal.Rptr. 585] applied the doctrine of substantial compliance to a statutory provision similar to section 4107.5—Government Code former section 4203 (now Gov. Code, § 5103). Former section 4203 specified procedures for bidders on public projects to follow to be relieved of their bids. The provision at issue in *A & A Electric, Inc.* stated as follows: " 'The bidder shall establish to the satisfaction of the court that: . . . (b) He gave the public entity *written notice* within *five days* after the *opening of the bids* of the mistake, *specifying in the notice in detail how the mistake occurred.*' " (54 Cal.App.3d at p. 464.) In applying the doctrine of substantial compliance to this statute, the court ultimately held that A & A did not substantially comply because it "did nothing within five days after the bid opening (or at any other later time prior to trial), to apprise the city of how the mistake occurred. . . ." (54 Cal.App.3d at pp. 464-465.)

" 'Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute.' [Citation.] Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form. When the plaintiff embarks [on a course of substantial compliance], every reasonable objective of [the statute at issue] has been satisfied." (*Southern Pac. Transportation Co.* v. *State Bd. of Equalization* (1985) 175 Cal.App.3d 438, 442 [221 Cal.Rptr. 12].)

The central purpose of the Act is to protect both the public and subcontractors from the practices of bid shopping and bid peddling in connection with public works projects. (§ 4101; *Southern Cal. Acoustics Co.* v. *C. V. Holder, Inc., supra,* 71 Cal.2d at pp. 725-726; *Bay Cities Paving & Grading, Inc.* v. *Hensel Phelps Constr. Co.* (1976) 56 Cal.App.3d 361, 365 [128 Cal.Rptr. 632]; *R. M. Sherman Co.* v. *W. R. Thomason, Inc.* (1987) 191 Cal.App.3d 559, 567 [236 Cal.Rptr. 577].) The two-day written notice provision of section 4107.5 fosters this purpose by forcing the prime contractor to assert its error in short order, and on the record, thus minimizing the time in which that contractor can shop for lower bids and limiting the room for deceptive maneuver.

The notice provided by MPA in this case satisfied these statutory objectives. On the morning following the District's 3 p.m. prime bid opening—that is, on the morning of May 27—MPA "faxed" a letter to the

District's representative (the District's architect on the Skyridge project) explaining that it (MPA) had inadvertently listed Cal-Air as the HVAC subcontractor on the project but noting that it had used Bangar's bid amount in its prime bid proposal. This letter explained that the error arose "[i]n the last minute flurry of receiving subcontractor bids," and that the "monetary change was effected in [MPA's] bid, but the change of company on the Listing was not." According to this letter, MPA had notified the District's representative about the error in a phone call on the day the prime bids were opened.

MPA telephoned Cal-Air the day after the prime bid opening and explained that it had inadvertently listed Cal-Air as the HVAC subcontractor on the Skyridge project. Cal-Air refused MPA's request to consent to Bangar's substitution. Under these facts, MPA had little time to go bid shopping.

On the fifth working day after the District had opened the prime bids (June 2, 1992), Cal-Air received a letter from MPA dated June 1. This letter referenced several telephone conversations over a number of days between the two companies regarding MPA's alleged inadvertent clerical error. Enclosed in this letter was a copy of MPA's May 27 letter to the District's architect; MPA explained to Cal-Air that this May 27 missive "advis[ed] of the error and the particulars thereto."

In its letter to the District's architect, MPA specified how the error occurred. MPA sent a copy of this letter to Cal-Air in time for Cal-Air to submit a timely written objection to the claim of error. (§ 4107.5.) Although MPA did not send a copy of this letter to Cal-Air until the fourth or fifth working day after the District had opened the prime bids, MPA and Cal-Air maintained telephone contact during this time. Cal-Air, apparently, had no trouble submitting a timely written objection to MPA's proposed substitution. And Cal-Air can hardly claim any sort of detrimental reliance since it was notified the day after the prime bids were opened that MPA did not consider it the HVAC subcontractor on the Skyridge project. Under these facts, notice to Cal-Air was completely effected and no real injury could have resulted to it by MPA's failure to provide *written* notice within two working days. Under these circumstances, every reasonable statutory objective has been met.

Cal-Air argues that the facts of this case align with those in *Coast Pump Associates* v. *Stephen Tyler Corp.* (1976) 62 Cal.App.3d 421 [133 Cal.Rptr. 88] (*Coast Pump*), where the court denied relief to a prime contractor

because the record did not show compliance with the section 4107.5 two-day written notice requirement. The decision in *Coast Pump* does not help Cal-Air.

In *Coast Pump*, the prime bids were due at 2 p.m. on July 31, 1974. At 1:40 p.m. on that day, the prime contractor learned that subcontractor No. 2 had submitted a lower bid than subcontractor No. 1. The prime contractor used subcontractor No. 2's figures in computing its own final bid, but kept the name and the figures of subcontractor No. 1 on the bid form. To account for the savings afforded by subcontractor No. 2's lower bid, the prime contractor merely put down a figure for an unrelated bogus item of work which reflected these savings. Then on September 27, 1974, presumably a significant time after the prime bids had been opened and the prime contractor's bid had been accepted, the prime contractor wrote to the awarding authority requesting permission to use subcontractor No. 2 so as not to cause "financial hardship." The awarding authority consented to the change and then the prime contractor notified subcontractor No. 1, by phone, that its subcontract bid had not been accepted. (62 Cal.App.3d at pp. 423-424.)

The facts in *Coast Pump* in no way mirror the facts here. The prime contractor in *Coast Pump* first notified the displaced subcontractor about the substitution after it was a done deal. The reasons for providing notice were completely thwarted in *Coast Pump* rather than completely effected: the displaced subcontractor was kept in the dark for months and was never given a chance to present its side of the story or to submit an objection. The prime contractor, moreover, engaged in an array of manipulative bid practices and apparently did not even claim inadvertent clerical error. In light of these facts, it is no wonder the court in *Coast Pump* concluded that the prime contractor failed to satisfy the two-day written notice requirement of section 4107.5.

We conclude that the doctrine of substantial compliance applies to the two-day written notice requirement of section 4107.5 and that MPA substantially complied with that requirement.

The parties also raise the question whether section 4107.5's two-day written notice requirement is to be accorded "directory" or "mandatory" effect. ■ " '[T]he "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the . . . action to which the procedural requirement relates.' " (*People* v.

*McGee, supra*, 19 Cal.3d at p. 959, quoting *Morris* v. *County of Marin, supra*, 18 Cal.3d at p. 908.) ▮ Since we have concluded that MPA substantially complied with the two-day written requirement (i.e., actually complied in respect to the substance essential to every reasonable objective of the statute), there has been no "failure to comply" and it is unnecessary to address this issue. To the extent that Cal-Air raises this "mandatory" issue as one of "*literal* compliance" rather than "substantial compliance," we reject the argument. Mandating *literal* compliance is not necessary to effectuate the statutory objective. (See 3 Sutherland, Statutory Construction, *supra*, § 57.01, pp. 2-3, § 57.26, pp. 66-67; *McGee, supra*, 19 Cal.3d at p. 958.)

### 3. *The Affidavit/Declaration Provision of Section 4107.5*

▮ In its petition for administrative mandate Cal-Air alleged, for the first time, that MPA and Bangar failed to file affidavits as required by section 4107.5. The pertinent language in section 4107.5 provides as follows:

"The awarding authority shall, after a public hearing as provided in Section 4107 and in the absence of compelling reasons to the contrary, consent to the substitution of the intended subcontractor:

"(a) If (1) the prime contractor, (2) the subcontractor listed in error, and (3) the intended subcontractor each submit an affidavit to the awarding authority along with such additional evidence as the parties may wish to submit that an inadvertent clerical error was in fact made, provided that the affidavits from each of the three parties are filed within eight working days from the time of the prime bid opening, or

"(b) If the affidavits are filed by both the prime contractor and the intended subcontractor within the specified time but the subcontractor whom the prime contractor claims to have listed in error does not submit within six working days, to the awarding authority and to the prime contractor, written objection to the prime contractor's claim of inadvertent clerical error as provided in this section.

"If the affidavits are filed by both the prime contractor and the intended subcontractor but the listed subcontractor has, within six working days from the time of the prime bid opening, submitted to the awarding authority and to the prime contractor written objection to the prime contractor's claim of

inadvertent clerical error, the awarding authority shall investigate the claims of the parties and shall hold a public hearing as provided in Section 4107 to determine the validity of those claims. Any determination made shall be based on the facts contained in the declarations submitted under penalty of perjury by all three parties and supported by testimony under oath and subject to cross-examination. The awarding authority may, on its own motion or that of any other party, admit testimony of other contractors, any bid registries or depositories, or any other party in possession of facts which may have a bearing on the decision of the awarding authority."

Cal-Air never specifically raised this affidavit issue in the administrative proceedings before the District. Instead, Cal-Air focused on MPA's failure to meet the two-day written notice requirement. The affidavit issue could easily have been handled at the administrative level and Cal-Air could have been afforded full relief there. ■ "It is a well-recognized rule in this state that if an administrative remedy is provided by statute, relief must be sought from the administrative body and such remedy must be exhausted before judicial review of the administrative action is available. . . . The rule is not a matter of discretion; compliance is a jurisdictional prerequisite to judicial review." (*Alta Loma School Dist.* v. *San Bernardino County Com. on School Dist. Reorganization* (1981) 124 Cal.App.3d 542, 554 [177 Cal.Rptr. 506], citations omitted; see also *Hampson* v. *Superior Court* (1977) 67 Cal.App.3d 472, 477 [136 Cal.Rptr. 722] ["defendant must first exhaust his administrative remedies by presenting his claim . . . to the (administrative body) as a condition of raising the claim in the trial court"].)

■ ■ Nevertheless, if MPA *must* file an affidavit to present a claim of inadvertent clerical error to the District and for the District to have the power to hear that claim, then Cal-Air's failure to raise this issue at the administrative level is immaterial. In other words, issues are again raised regarding the obligatory-permissive and mandatory-directory dichotomies.

■ As for the obligatory-permissive dichotomy, we note that the language of section 4107.5 is not as specific in requiring affidavits as it is in requiring the two-day written notice. In fact, there is no language in that section explicitly requiring affidavits, although it is strongly implied. Instead, the provisions regarding affidavits in section 4107.5 focus on the awarding authority's procedure for resolving claims. Nevertheless, it does not appear that the prime contractor is free to ignore the affidavit provision. In that sense, this provision can be considered obligatory. ■ Assuming that this provision is obligatory, it cannot be said that

MPA complied or substantially complied with it. MPA did not file an affidavit and no sworn testimony was taken at the hearing before the District's board of trustees.

Thus, we assume there has been a failure to comply with the particular procedural step of section 4107.5 involving affidavits. The question is whether this failure, under the mandatory-directory dichotomy, invalidates the action to which the procedural requirement relates (i.e., the District's approval of the substitution of Bangar). (*People* v. *McGee, supra,* 19 Cal.3d at p. 959.) In California, " '[m]any statutory provisions which are [deemed obligatory] are accorded only "directory" effect.' " (*Ibid.; Morris* v. *County of Marin, supra,* 18 Cal.3d at p. 908, fn. 4.) We conclude that the affidavit provision of section 4107.5 is one such measure.

 In evaluating whether a statutory procedure is to be accorded mandatory or directory effect, courts look to the procedure's purpose or function. If the procedure is essential to promote the statutory design, it is "mandatory" and noncompliance has an invalidating effect. If not, it is directory. (*People* v. *McGee, supra,* 19 Cal.3d at p. 908; 3 Sutherland, Statutory Construction, *supra,* § 57.01, p. 2; *Estate of Mitchell* (1942) 20 Cal.2d 48, 51-52 [123 P.2d 503].) If a statutory directive does not go to " 'the essence' of the particular object sought to be obtained, or the purpose to be accomplished" and a "departure from the statute will cause no injury to any person affected by it," the provision will be deemed directory. (*Crane* v. *Board of Supervisors, supra,* 17 Cal.App.2d at pp. 367-368.)

 As noted, the affidavit provisions in section 4107.5 focus on the awarding authority's procedure for resolving claims. Along these lines, it has been said that ". . . provisions defining time and mode in which public officials shall discharge their duties and which are obviously designed merely to secure order, uniformity, system and dispatch in the public bureaucracy are generally held to be directory." (3 Sutherland, Statutory Construction, *supra,* § 57.14, p. 37; see also *Edwards* v. *Steele* (1979) 25 Cal.3d 406, 409-410 [158 Cal.Rptr. 662, 599 P.2d 1365]; *People* v. *McGee, supra,* 19 Cal.3d at pp. 958-959.) Section 4107.5 specifies a progressive three-level process by which the awarding authority is to consider the affidavits and determine the issue of substitution. In level one, the awarding authority shall consent to the substitution if all of the parties agree in affidavits (and any other evidence they wish to present) that an inadvertent clerical error was in fact made. (§ 4107.5, subd. (a).) In level two, the awarding authority shall consent to the substitution if the prime contractor

and the intended subcontractor have filed affidavits claiming that an inadvertent clerical error was made and the erroneously listed subcontractor has failed to object to that claim. (§ 4107.5, subd. (b).) Finally, in level three, the prime contractor and the intended subcontractor have filed affidavits and the listed subcontractor has objected to their claim of inadvertent clerical error. In this situation, the awarding authority is to investigate the dispute and hold a public hearing to resolve it. This determination is to be based on the affidavits and testimony at the hearing. From the perspective of the awarding authority (here, the District), this three-level process appears "obviously designed . . . to secure order, uniformity, system and dispatch in the public bureaucracy." From this perspective, then, these statutory provisions can be considered "directory."

But section 4107.5 encompasses statutory directions to both public officers and private persons. Adding the perspective of MPA, Cal-Air, and Bangar to the mix invokes the general principles cited above on statutory purpose and essence. The affidavit provision, from both the District's perspective and that of the parties, cannot be regarded "as of the essence" to the object or purpose of the statute. The affidavit provision commits a claimant to a particular position and prescribes a certain evidentiary mode, thereby furthering the integrity of the factfinding process; however, this is not the only road to truth. An affidavit may also provide notice to the erroneously-listed subcontractor (although we note that under the terms of section 4107.5 the deadline for filing an affidavit is after the deadline for filing an objection to the claim of inadvertent clerical error). Like the factfinding process, though, sufficient notice is not exclusively dependent upon an affidavit.

As we explain, " 'the essence of the thing to be done' " under this part of section 4107.5—namely, to provide notice and a full, fair, and accurate hearing—was completely effected without affidavits and no possible injury to Cal-Air could have resulted from the lack of affidavits. (*Crane v. Board of Supervisors, supra*, 17 Cal.App.2d at pp. 368-369, quoting from *State v. Bird* (1922) 295 Mo. 344, 351 [244 S.W. 938].) " 'Under this state of facts, there is little ground for the holding that the [affidavit provisions] should be construed as mandatory.' " (17 Cal.App.2d at p. 369)

As for the notice aspect, MPA telephoned Cal-Air the day after the prime bids were opened and explained the predicament. MPA then maintained telephone contact with Cal-Air regarding this issue. On the fifth working day after the prime bids were opened, MPA sent Cal-Air a copy of the letter it (MPA) had sent to the District the morning after the bids were opened

explaining how the error occurred. In fact, MPA had notified the District's representative about the error in a phone call *on the day* the prime bids were opened. In this way, Cal-Air was not only promptly and specifically notified but MPA was squarely "on the record."

As for the integrity of the factfinding process, each side presented its case to the District based on the positions it had taken in correspondence and other communications prior to the hearing. These communications, which the District had before it at the hearing and which occurred in short order, afforded MPA little time or room to maneuver deceptively. At the hearing, each side was allowed the opportunity to present any other evidence. Neither side chose to do so. Cal-Air never maintained in the administrative proceedings that the hearing procedure was unfair or that it was denied the opportunity for a full hearing or that it was given inadequate notice or that the District could not base its decision on the evidence presented. In fact, the record of the administrative proceedings indicates that Cal-Air never disputed that MPA actually made an inadvertent clerical error.

 ██ Since the affidavit provisions of section 4107.5 were not essential to promote the statutory design, these provisions should be construed as directory rather than mandatory. Accordingly, Cal-Air's failure to raise in the administrative proceedings the issue of the lack of affidavits forecloses it from raising this issue in the court proceedings. (*Alta Loma School Dist.* v. *San Bernardino County Com. on School Dist. Reorganization, supra*, 124 Cal.App.3d at p. 554; *Hampson* v. *Superior Court, supra*, 67 Cal.App.3d at p. 477.)[2]

 Finally, it is not clear whether Cal-Air, in its petition for administrative mandate, raises the legal contention that the evidence is insufficient to support a finding of inadvertent clerical error. To the extent that Cal-Air poses this question of law, we conclude, based on a review of the administrative record, that there is sufficient evidence to support this finding. (Code Civ. Proc., § 1094.5; see *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

---

[2]Had Cal-Air objected to the lack of affidavits in the administrative proceedings and had the District elected to proceed in their absence, an issue of substantial compliance likely would have arisen. As for the notice function of an affidavit, it could be argued that MPA substantially complied with this aspect for the reasons already set forth. The same cannot be said for the "evidentiary mode" aspect of an affidavit since there was no "*actual* compliance" in this respect. (See *Southern Pac. Transportation Co.* v. *State Bd. of Equalization, supra*, 175 Cal.App.3d at p. 442.)

## Disposition

The judgment is reversed. MPA is awarded its costs on appeal.

Sparks, Acting P. J., and Sims, J., concurred.